CASE 7—MANDAMUS—DECEMBER 9.

# Wilson v. Bradley, Governor.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. FUGITIVE FROM JUSTICE—EXPENSES AND MILEAGE INCURRED IN UNSUCCESSFUL EFFORT TO RECLAIM.—Under Sec. 1934 of the Kentucky Statutes providing for mileage and expenses to be paid to the agent of this Commonwealth in traveling to and from another State for the purpose of reclaiming a fugitive from justice, the agent is not entitled to his mileage and necessary expenses unless he actually reclaims and brings back to this State such fugitive from justice.

2. AFFIDAVIT TO CLAIM—REQUISITES OF AS TO ROUTE TRAVELED.— An account for expenses and mileage in such a case is fatally defective if it fail to show that the mileage was computed by the route most usually traveled.

3. ACCOUNT MUST CONTAIN NO ILLEGAL ITEMS.—Unless the account is correct as a whole, the Governor is warranted in refusing to approve it.

4. MANDAMUS—WHETHER IT WILL LIE AGAINST THE GOVERNOR.—

Wilson v. Bradley, Governor.

Whether the action of the Governor can be controlled by mandamus in such a case is doubted, but where the Governor submits to such an action without objection the courts will determine the rights of the plaintiff.

C. P. CHENAULT AND GUY H. BRIGGS, FOR APPELLANT.

1. The agent for the reclamation of a fugitive from justice, being the mere agent of the Commonwealth, with no personal interest in the return of the fugitive, the State of Kentucky is liable for his expenses whether successful or unsuccessful through no fault of his own. Sec. 1934 of Ky. Stat. Public policy requires this construction of the statute.

2. The language of the statute carries with it a discretion in the Governor to impose any condition he may see proper in issuing his commission. He may, therefore, provide in the commission that the agent is to receive no compensation unless he shall be successful in his attempt to reclaim and return the fugitive. Booker v. Stevenson, 8 Bush, 39.

WILLIAM O. BRADLEY, GOVERNOR OF KENTUCKY, IN HIS OWN BEHALF.

1. The construction contended for by the appellant would open the door to gross frauds upon the Commonwealth. It is shown by the Auditor's reports that many thousands of dollars are expended each year under what is known as "expressages," including the cost of bringing back to this State fugitives from justice. The statute itself limits the mileage to the route most usually traveled and the fee and necessary expenses to such as the agent may have to expend "in reclaiming and transporting each fugitive," and further provides that he is not to be so entitled except "upon the return" of the fugitive to the county in which is located the jail mentioned in the proclamation.

2. The petition is fatally defective in failing to say that the mileage claimed was computed "by the route most usually traveled."

3. It does not appear why the fugitive from justice was not returned or that the Governor of New York refused to honor the requisition.

4. The item claimed of $7.44 for expenses from Mt. Sterling to Frankfort and return is not proper, and under a ruling of this court in Booker v. Stevenson, 8 Bush, 39, the Governor is justi-

fied in refusing to allow an account which contains any illegal
item.

GUY H. BRIGGS, FOR APPELLANT, in a supplemental brief,
made the additional citation of Green v. Page, 80 Ky., 368.

Same counsel filed a petition for a rehearing, further arguing
the construction of the statutes bearing on the question.

JUDGE DURELLE DELIVERED THE OPINION OF THE COURT.

By section 1934, Ky. Stat., it is provided that, "in all cases
where the Governor of this Commonwealth shall make a
requisition upon the Governor of another State or Terri-
tory for a fugitive from justice, the person named in
such requisition as the agent of this Commonwealth shall,
*unless a different condition is contained in the commis-
sion of the agent*, be allowed to receive as compensation
for his services at the rate of six cents per mile for the
distance he may travel to and from the jail of the county
designated in the proclamation to the place where said
fugitive may be arrested—the distance to be computed by
the route most usually traveled, and such other fees and
necessary expenses as he may have to expend in reclaim-
ing and transporting such fugitive." Under this section
the appellant was appointed the agent of the Common-
wealth to demand a fugitive from justice in the state of
New York, and lodge him with the jailer of the county
of Montgomery. The appellant proceeded to New York,
but the Governor of that State refused to honor the requi-
sition; and, upon appellant's account for mileage to and
from New York being presented, the Governor of this
Commonwealth refuses to approve it. Certain minor ob-
jections to the account as presented, such as that the ac-
count includes mileage from Mt. Sterling to Frankfort
and return, in order to obtain the requisition; and from the
city of New York, where the fugitive was arrested, to the

city of Albany, in order to obtain the warrant of the New York Governor; as well as the objection that the affidavit filed with the claim does not show the distance, to be computed by the route most usually traveled, as required by the statute, but only that the distance claimed for was necessarily traveled,—seem to us to be well taken. It follows, therefore, in accordance with the view expressed in Booker v. Stephenson, 8 Bush, 41, that the Governor can not be considered in default for refusing to allow the claim. It was there said, Judge Lindsay delivering the opinion: "If it be conceded that the duty of the Governor in the allowance of such claims is purely ministerial, and that the performance of the same can be enforced by *mandamus*, still he can not be regarded as in default for refusing to allow a claim which embraces any illegal or unauthorized charge."

This conclusion being reached, we need not consider the question in that case referred to, whether *mandamus* will lie against the Governor in such case. But, as the Governor did not raise the question whether *mandamus* would lie against him, we must assume that the omission to do so was because he desired the question decided whether such a claim ought to be allowed by him.

It is urged on behalf of appellant that, unless some condition to the contrary is inserted in the commission to the agent of the Commonwealth, he is entitled to six cents per mile as matter of right, whether he succeeds in reclaiming and returning the fugitive or not. But we have, though with some hesitation, reached the conclusion that neither fees and expenses in reclaiming and transporting the fugitive, nor mileage of the agent to and from the state in which the fugitive has taken refuge, were intended by the statute to be allowed, except in the event

of the reclamation of the fugitive and his return to this Commonwealth. Force is given to this conclusion by the fact that the same sentence of the statute allows the mileage to the agent, "and such *other fees and necessary expenses* as he may have to expend *in reclaiming and transporting such fugitive;*" the language used indicating that the mileage and the fees and expenses are to be allowed only in the event of their expenditure in reclaiming and transporting the fugitive. The judgment is affirmed, the whole court sitting.

Judge Paynter, dissents from that part of the opinion which holds that the agent is not entitled to mileage unless he reclaimes the fugitive. Chief Justice Lewis, also dissents.

Although the agent of the Commonwealth did not succeed in reclaiming and transporting the fugitive, he is entitled to receive as compensation for his services at the rate of six cents per mile for the distance traveled to and from the jail of the county designated in the proclamation to the place where the fugitive was arrested, the distance to be computed by the route most usually traveled, as a different condition was not contained in his commission. It should be supposed that, when the Governor commissions an agent to reclaim and transport a fugitive from justice, he is of the opinion that the fugitive has committed a public offense for which he should be prosecuted. The presumption should be indulged that he would not select any one except a trustworthy person to execute such a commission. If there are any reasons why he thinks the agent which he appoints should not receive the compensation provided by the statute, he should insert in the commission a condition to that

effect. If he thinks the compensation provided by the statute is insufficient, the Legislature has vested him with the power (as it is his duty to see that the laws are faithfully executed) to fix a compensation which will enable the agent to discharge the duty which his commission imposes, without loss to him. If, on the other hand, he is of the opinion that the compensation provided by the statute is too much to be allowed the agent under the peculiar circumstances of the case, he has the power to limit it to an amount less than that provided in the statute, or he may say that he shall not receive any compensation. It is perfectly unreasonable to suppose that the legislature ever intended that, in case the agent failed to reclaim and transport the fugitive without any fault of his, he should not be entitled to receive the compensation provided in the statute or fixed in his commission by the Governor. The agent is not supposed to represent himself or some individual, but to represent the Commonwealth, and, in fact, is the only person authorized by law to reclaim and transport to this jurisdiction a person who has violated the criminal laws of the commonwealth and become a fugitive from justice. Certainly the General Assembly, in enacting a statute providing for an agent to perform so important a public duty, did not intend to be guilty of this ridiculous absurdity and manifest injustice, and to almost make the statute *felo de se*, by making the agent lose all compensation, beside incur a great expense, if he failed to obtain the fugitive. Can it be for a moment supposed that a General Assembly which recognized that it was good for society and the Commonwealth that fugitives from justice should be reclaimed, tried, and, if found guilty, punished, would enact a statute intending it to have the meaning given it by the court? The lawmak-

Wilson v. Bradley, Governor.

ing department never intended that an agent commission-
ed under the statute should bear the expense of a faith-
ful, though an unsuccessful, attempt to execute the Gov-
ernor's commission, instead of making this great Common-
wealth pay it. To so hold that it was the purpose of the
General Assembly is to deny its wisdom and its sense of
justice. What citizen, who has not a vengeance to wreak
or a debt he desires collected by a criminal process, would
be willing to go to Maine or California, or any far distant
state, to reclaim and transport a fugitive from justice,
if he knew he was compelled to pay the expense of the
trip, and receive no compensation if his effort to execute
the commission was unsuccessful?

It will result from the construction which the court gives
the statute that the Governor will not be able to get any
one to act as his agent, except one who has a vengeance to
satiate or a debt to collect by a criminal process.

The Governor called upon might refuse to sur-
render the prisoner or the courts of the State to
which he had fled might hold that he could not
be transported, still, under the opinion of the court,
the agent would incur the expense of the trip without any
hope of compelling the Commonwealth to pay it, notwith-
standing he did his full duty to execute the commission
given him. Again, if the conclusion of the court be cor-
rect, the agent might return with the fugitive to the city
wherein the jail is situated, and, if he was overpowered
by a mob and his prisoner rescued before delivering him
to the custody of the jailer, he is not entitled to the com-
pensation provided by the statute. This illustration alone
shows the interpretation which the court gives the statute
is *reductio ad absurdum.* The conclusion of the court
is not forced by the letter of the statute, and the reason

of its enactment should enter into its interpretation, and
when it does so a conclusion contrary to the one reached
by the court necessarily follows. It is contrary to reason
and common justice to say that, because the agent did not
incur any expense in transporting the fugitive, he is not
entitled to the mileage allowed by the statute which he
earned in acting under the commission of the Governor.
That view of the statute is an exceedingly narrow one.

It is suggested that the door of fraud is opened by per-
mitting the payment of mileage when the fugitive is not
actually reclaimed, and an analogy is suggested to other
cases under the statute when fees are allowed for ser-
vice of process or arrest of offenders. The language of
the statute in such cases is much more definite than in
the case at bar; and, in view of that fact alone (if there
was no other reason), we would reach the conclusion that
when the Governor, under the authority vested in him,
employs an agent, and does not exercise the power given
him to insert a different condition in the commission of
the agent, it is his intent, as well as the legislative intent,
that the agent shall receive the statutory mileage. This
case is not analogous to the cases wherein sheriffs and
other such ministerial officers are not entitled to fees
unless the process is served or a warrant of arrest exe-
cuted. Such officers have a variety of duties to perform
for which fees are allowed. They are required to perform
services for which their compensation depends upon the
success which may attend their effort. The lawmaking
power, in an endeavor to give such officers suitable com-
pensation, by the way of fees, for discharging the duties
of their respective offices, says how much they are to re-
ceive and the conditions upon which they are entitled to it.
In some cases the fees received are munificent, while in

others they get nothing. The sum total of the fees allowed are intended to remunerate them for the whole services which they are required to perform. In this case the agent has but a single official act to perform, and if he fails to receive compensation for it, or incurs expenses in doing or attempting to do it, there is no way for him to be compensated or recouped the expense incurred, except as provided by the statute. To say that some agent might act fraudulently in not trying to reclaim and transport a fugitive is no evidence of the fact that the lawmaking power intended that faithful officials should not be paid for services performed. To say that the door is open to fraud to allow mileage to the agent where he fails to transport the fugitive to the jail is equivalent to saying that the Chief Executive of the Commonwealth can not be trusted to select an honest and capable person to execute his commission. He should and can be trusted to select an agent who will not be guilty of practicing a fraud upon the Commonwealth. The General Assembly took this view of the matter, because it gave the Governor the power to disregard the provision of the statute fixing the compensation of the agent, and authorized him to prescribe the compensation which the agent should receive.

Judge Hobson delivered the response to the petition for a rehearing:

The section of the Kentucky statutes quoted in the opinion seems to have been made to carry into effect the federal statute of 1793, passed pursuant to the Constitution of the United States, for the surrender of fugitives from justice, and now embraced in section 5278 of the Revised Statutes of the United States, which reads as follows: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of

the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear.  If no such agent appears within six months from the time of the arrest, the prisoner may be discharged.  All costs or expenses incurred in the apprehending, securing and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory."  .

Under this statute, it is the duty of the governor of the State of whom the fugitive is demanded to cause him to be arrested, and notice of the arrest given to the executive making the demand, or his agent.  The agent is then given six months to appear and receive the prisoner.  The State making the demand is then responsible for all costs incurred in arresting, holding, and transmitting the prisoner.  It is not contemplated by the statute that the State making the demand shall incur any liability until the prisoner is arrested; nor is the agent of that State to take any action until then.  It should be presumed that the meaning of the Kentucky statute is the same as the federal statute it was enacted to effectuate; and this seems to us the fair construction of its terms.  It provides that the

agent shall "receive as compensation for his services at
the rate of six cents per mile for the distance he may trav-
el to and from the *jail* of the County designated in the
proclamation to the place where said fugitive may be ar-
rested, the distance to be computed by the route most usu-
ally traveled." There is no other measure of his com-
pensation than the distance between the jail in this State
to which the prisoner is to be taken and the place in the
other State where he may be arrested. The agent is not
allowed for traveling to any other place; nor is it contem-
plated that he shall go to the State Capitol or any other
place than that of the fugitive's arrest. This place is not
where he may reside or where he might be arrested, but
where he actually is arrested. Until he is arrested, this
place can not be determined; for, if the arrest is made
far from his home in the State of which he is demand-
ed, the agent would clearly be entitled to compensation
for the distance to that place, and not to the fugitive's
home. In our judgment, the words "may be arrested,"
above quoted, are used simply to designate the place of
the fugitive's arrest, as provided in the federal statute,
and that no liability is incurred by this State prior to such
arrest. This conclusion is confirmed by the fact that the
other terminus of the travel for which the mileage is al-
lowed is the *jail* of the County designated in the procla-
mation. It seems to us that compensation in mileage
for travel to and from the place where fugitives may be
arrested to the *jail* to which he is to be taken in this State
must necessarily be dependent upon the arrest of the fu-
gitive. It is well settled that the State is not to be made
a debtor by implication. He who knocks at the door of
the treasury, demanding the money of the State must show
a clear warrant of law for its delivery to him. (Wortham

v. Grayson County Court, 13 Bush, 57; Davis v. Norman, Auditor, 10 Ky. Law Rep., 812.)    The petition for rehearing is overruled.