## Coleman, Auditor of Public Accounts, et al. v. Greene.

(Decided June 16, 1931.)

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellants.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal brings to this court again for construction and application section 1934, Ky. Statutes, which is in this language:

> "In all cases where the governor of this Commonwealth shall make a requisition upon the governor of any other state or territory for a fugitive from justice, the person named in such requisition as the agent of this Commonwealth shall, unless a different condition is contained in the commission of the agent, be allowed to receive as compensation for his services at the rate of six cents (6c) per mile for the distance he may travel to and from the jail of the county designated in the proclamation to the place where said fugitive may be arrested—the distance to be computed by the route most usually traveled—and such other fees and necessary expenses as he may have to expend in reclaiming and transporting such fugitive. Upon the return of the fugitive to the county in whch is located the jail mentioned in the proclamation, the person having him in charge shall go before a magistrate, who shall issue a mittimus to the jailer to receive the prisoner and keep him until he is discharged."

This section was first presented for construction in Wilson v. Bradley, Governor, 105 Ky. 52, 48 S. W. 166, 1088, 20 Ky. Law Rep. 1118. In that case the court considered this section of the statute twice, first when preparing its opinion, and second on the petition for rehearing. The facts were substantially as follows: Abraham Joseph was a fugitive from justice from the state of Kentucky, charged with the crime of obtaining money under false pretenses, a felony under the law of this commonwealth. Wilson was designated the agent of this commonwealth by Honorable W. O. Bradley, Governor of the commonwealth of Kentucky, who signed and delivered to him a requisition on the Governor of New York for Joseph, whereby Wilson was authorized to reclaim Joseph, transport, and deliver him into the custody of the jailer of Montgomery county, Ky. Wilson, as agent of the commonwealth of Kentucky, immediately upon his appointment as such agent, proceeded to, and did, secure the detention of Joseph by the authorities of the state of New York, and immediately proceeded to that state for the purpose of demanding and receiving from the proper authorities of that state the fugitive, Joseph. The Governor of the state of New York, without fault of the agent Wilson, declined and refused to deliver into his custody, as agent for the commonwealth of Kentucky, the fugitive, Joseph. Whereupon Wilson returned to Kentucky, prepared and made out his expense account, including 6 cents per mile for the distance he had traveled and such other fees and necessary expenses as he had expended in reclaiming such fugitive, amounting to $111.85.

In the present case, S. S. Little was charged with a felony alleged to have been committed in Daviess county, Ky., for which he had been indicted. He was a fugitive from justice and in the state of California. The Governor of the commonwealth of Kentucky made a requisition upon the Governor of the state of California for the return of Little. The appellee, Green, was designated and commissioned by the requisition of the Governor of the commonwealth of Kentucky to go to the state of California, to demand from the proper authorities of that state the fugitive, Little, and to reclaim, transport, and deliver him to the jailer of Daviess county. The appellee, acting in pursuance to the authority conferred upon him by the requisition of the Governor of Kentucky, went to Sacramento, Cal., where the fugitive was arrested and

demanded his return. The Governor of the state of California, without fault on the part of the appellee, Green, refused to honor the requisition. Green returned to the state of Kentucky, prepared and verified a claim for 6 cents per mile for the distance he had traveled, computed by the route most usually traveled of 5,135.5 miles, amounting to $308.13, which, when added to his expenses amounted to $380.45, the sum now claimed by appellee. The language, "The agent will be allowed compensation in accordance with section 1934, Ky. Statutes," was indorsed on the face of the requisition. On presentation to the Governor of the commonwealth, his claim was approved. Whereupon it was presented to the auditor of public accounts and he refused to issue his warrant on the state treasury for its payment. This action was filed in the Franklin circuit court to compel the auditor to issue, and the treasurer to pay his warrant therefor, to the appellee. Judgment was entered directing the auditor to issue his warrant for the sum of $380.45, and the state treasurer to pay same.

In the case of Wilson v. Bradley, supra, the Governor refused to approve Wilson's claim. The auditor declined and refused to issue and draw a warrant on the treasurer for its payment without its approval by the Governor. Wilson filed an action in the Franklin circuit court for a mandamus compelling Governor Bradley to approve his claim and the Auditor to issue and draw his warrant on the treasury of the commonwealth for its payment. The Franklin circuit court on a hearing dismissed his petition. On an appeal this court affirmed the judgment.

Our construction of the section of the statute, supra, at that time was that the agent Wilson was not entitled to his mileage and necessary expenses unless he actually reclaimed and brought back to this state such fugitive from justice. The only distinction between that case and the present one is, in it Governor Bradley refused to approve the agent's claim, while in the present one the Governor approved it. The construction of the statute does not depend upon the action or nonaction of the Governor in approving or refusing to approve the agent's claim. The action or nonaction of the Governor in approving or refusing to approve the claim of the agent merely reflects the personal views of that official.

We are prepared to say at the outset that no logic, reason, or authority has been presented to us warranting

in our view a constructon of that statute different from that given it in the case of Wilson v. Bradley, supra. If it were of doubtful meaning, the fact that it was construed thirty-three years ago by the court, and this construction has been acquiesced in for this period of time by the General Assembly and the officers of the commonwealth, would persuade us to resolve the doubt in favor of the construction originally given it. Possible doubt as to the proper construction of the language of the statute should be resolved in the light, not only of its legislative history and administration, but in the light of its judicial construction. Brewster v. Gage, 280 U. S. 327, 51 S. Ct. 115, 74 L. Ed. 457; Universal Battery Co. v. United States, 281 U. S. 580, 50 S. Ct. 422, 74 L. Ed. 1051; Fawcus Machine Co. v. United States, 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. ——; McCaughn v. Hershey Choc. Co., 51 S. Ct. 510, 75 L. Ed. ——.

The section under consideration was enacted in 1892, and its construction by this court was given in 1898, and no Governor of the commonwealth has recommended, and no General Assembly which has convened since has proposed by an enactment, to change it in language or meaning, notwithstanding its interpretation by this court, and it may now be regarded the law of this state as construed by the court, in Wilson v. Bradley, supra.

It is a settled rule of this court that, "when a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written in it." McChesney v. Auditor, 104 S. W. 714, 716, 31 Ky. Law Rep. 1038; Lilly v. O'Brien, 224 Ky. 474, 6 S. W. (2d) 715, 717; Douglass v. Pike County, 101 U. S. 677, 25 L. Ed. 968.

"We think it may be set down as sound in principle that when a legislative enactment of doubtful character has been construed by a court of last resort, and this construction has been acquiesced in, not only by the parties affected, but by the legislative branch of the government for a period of years, that it must be accepted as correct, and that in considering the statutes interpreted they must be read in connection with the opinion of the court, and, in fact, the opinion becomes in effect a part of the statute binding upon all persons asserting rights

under it or whose interests are affected by it.''
McChesney v. Auditor, supra.

The plain purpose of the enactment of the statute
was to reclaim and return to the commonwealth fugitives
from justice, and with its meaning confronting a person
designated as agent for the commonwealth that, unless
the fugitive is returned and delivered to the jailer, no
money will be expended by the commonwealth for the
effort, has a tendency to strip such agent of all influences
except to reclaim and return such fugitive. The statute
anticipates that some officer of a county or of the com-
monwealth will be designated as agent and who is at the
time receiving a salary as such officer and not the appoint-
ment of a private citizen.

In Wilson v. Bradley, supra, Governor Bradley
signed and filed a brief in his own behalf. In it he used
this language:

"Six cents a mile going and returning may not
be considered extravagant for arresting and return-
ing a criminal to this State, but when the distance
traveled is considered the pay becomes quite attrac-
tive. For instance take the present case. Here his
account is $111.52, at three cents a mile it would be
only about $55.00, thus making $55.00 clear. Persons
never object to these trips for prey. Now in view of
these facts the law makers very clearly intended to
provide a remedy and prevent a fraud. . . . The
reason for this is apparent. If officers of the law are
entitled to take these trips at the State's expense
and collect the mileage, whether the prisoner is
returned or not the doors of fraud would be opened
and the state robbed of thousands of dollars
annually. . . . The plain result would be that
designing men would rob the state."

The reasons urged in his brief are potent and con-
vincing ones, adequate to justify its enactment, and its
strict construction and application. It is easy to be seen
that, without its language confining the payment of
mileage and expenses to cases in which the fugitive has
actually been reclaimed and returned to the jailer of the
county where the indictment is pending, a new enterprise
in politics could be indulged in, and some energetic
person could engage his time by making applications for
requisitions for fugitives from justice and thus engage

himself and at the same time enrich his exchequer at the expense of the commonwealth. If the construction of the statute, as we have heretofore given it, is not to the best interest of the commonwealth, it must be left to the Legislature to alter, amend, or repeal it.

The judgment is reversed for proceedings consistent with this opinion.

Whole court sitting.