MARY J. VAIL *vs.* THOMAS J. VAIL AND OTHERS.

Where property is bequeathed to a married woman it is necessary, in order
to exclude the marital rights of the husband, that an intention on the
part of the testator to vest in her a separate estate should appear so
clearly as to be beyond the reach of reasonable doubt.

It is not necessary that the words "sole and separate estate" should be
used for that purpose; but in the absence of words of equivalent import,
or provisions that exclude the marital rights of the husband, or give the
wife powers concerning the property inconsistent with the disabilities of
coverture, the rights of the husband will attach.

Where a fund was given to trustees who were to pay to a married woman
"the rents, dividends and income thereof annually," it was held that
the income as it became payable was not to be regarded as estate newly
acquired, and that therefore the marital rights of the husband as to such
income were not affected by the act of 1878, which provides that all
property thereafter acquired by any married woman should be held by
her to her sole and separate use.

The estate of a married woman under such a will is acquired once for all
when the will becomes operative by the death of the testator.

AMICABLE SUBMISSION upon an agreed statement of
facts, to the Court of Common Pleas of Hartford County;
reserved for the advice of this court. The case is fully
stated in the opinion.

*R. Welles,* for the plaintiff.

*C. E. Perkins,* for the defendants.

LOOMIS, J.    The will of John Grou, executed on the 8th
of December, 1865, and which became operative by his
decease on the 10th day of May, 1866, gave to certain
trustees one hundred thousand dollars, in trust to invest
and hold the same "for the use and benefit of his four
children, John Grou, Jr., George Grou, Mary J. Vail," (the
plaintiff) "and William D. Grou, during their natural
lives," and "to pay them equally the rents, dividends,
increase and income thereof annually." In case of the
death of any of his children leaving issue, then his or her
share was to be transferred to such issue, free from the

trust, but if they should die without issue then the same should be held in trust for the survivors—with a further provision that five thousand dollars previously paid to Mary J. Vail should be considered an advancement and counted as part of the one hundred thousand dollars, thus giving her the use of twenty thousand dollars instead of twenty-five thousand. The trustees accepted the trust and regularly paid the income to the three sons respectively, and to Thomas J. Vail as husband and statutory trustee of Mary J. Vail, until September, 1880, when they were notified that the plaintiff claimed that the payments should be made to her personally as her sole and separate estate, and thereupon this amicable suit was instituted to determine whether the income of the trust fund belongs to the plaintiff for her sole and separate use or to Thomas J. Vail as her trustee under the statute.

The answer to this question will involve a construction of the will and of certain statutes claimed to have some bearing upon the subject.

The rule for the construction of the will that everywhere obtains is, that in order to exclude the marital rights of the husband from attaching to property coming to the wife during coverture, or belonging to her at the time of marriage, an intention on the part of the testator to vest in the wife a separate estate ought to appear from the terms or provisions of the will so clearly as to be beyond the reach of reasonable controversy. Schouler's Dom. Rel., 2d ed., 189; 2 Perry on Trusts, § 647; Hill on Trustees, 611.

In the will under consideration there is not only an omission of the technical words "sole and separate estate," (which it is conceded are not indispensable,) but there are no words of similar import; and, furthermore, there are no provisions excluding the marital rights of the husband on the one hand, or on the other giving to the wife powers concerning the estate inconsistent with the disabilities of coverture. Indeed there are no expressions or provisions at all except the natural and ordinary ones used in almost every case to define the interest of a cestui que trust.

A reference to the authorities will show that much stronger expressions than any contained in this will have uniformly been held insufficient to create a separate estate in the wife. See a summary of the cases in 2 Perry on Trusts, § 649.

In *Tyler* v. *Lake*, 2 Russ. & Mylne, 183, a deed to trustees for married women used the words—"in trust to pay the same into their own proper and respective hands, to and for their own respective use and benefit." In *Kensington* v. *Dolland*, 2 Mylne & Keen, 184, the words were "for her own use and benefit." In *Lewis* v. *Matthews*, L. R. 2 Eq. Cas., 177, the devise was to a married woman and her heirs and assigns, "for her and their sole and absolute use and benefit." In *Houston* v. *Embry*, 1 Sneed, 480, the gift was "to the only proper use and behoof of" the married woman "her heirs and assigns forever." And yet in all these cases it was held that the words were not sufficient to create a separate estate in the wife.

The fact that the legacy consisted only of the use or interest in the fund during the natural life of the wife cannot affect the question.

In *Fitch* v. *Ayer*, 2 Conn., 143, a testator gave his daughter, a feme covert, a legacy of £200, directing the interest to be paid to her during her coverture, and the principal afterwards, and it was held that the husband alone was entitled to receive the interest. SWIFT, CH. J., in giving the opinion, said in substance that upon the principles of English law a legacy in this form could not create a separate estate, but that it had always been construed a gift to the husband himself. GOULD, J., in giving an additional opinion, said that the circumstance relied upon by the defendant as indicating an intention to create a separate estate, that the accruing interest was payable only during the legatee's coverture and the principal upon her becoming discovert, tended rather to countenance the contrary presumption, that the object of the discrimination was to place the principal only beyond the plaintiff's control.

In *Brown* v. *Clark*, 3 Ves. Jr., 166, the bequest was to a

married woman of the interest of certain residuary estate, with a direction that at her death the principal should be divided equally among her children, with these words added:—"the husband by no means to have any part whatever;" and yet Lord Loughborough held that the husband was not deprived of that right in the *interest* which the law gave him in the wife's property.

The further fact that the fund was vested in trustees under the will can have no effect to deprive the husband of his interest. 1 Bishop's Law of Married Women, § 836; *Lamb* v. *Milnes*, 5 Ves. Jr., 517; *Mayberry* v. *Neely et als.*, 5 Humph., 337; *Evans & wife* v. *Knorr, Exr.*, 4 Rawle, 67; *Lenoir* v. *Rainey*, 15 Ala., 667.

The case of *Goulder* v. *Camm*, 1 De. G., F. & J., 146, was cited as sustaining the plaintiff's construction of the will. The devise there was of certain lands to trustees "for the use and benefit of *E. T.* the wife, the rents and profits of which estate," it was expressly provided, "she shall receive *herself* while she lives, whether *married or single.*" It will be seen that it is clearly distinguishable from the will under consideration by the definite words pointing only to the woman as the recipient, irrespective of her condition as to coverture.

The case of *Tyson's Appeal*, 10 Penn. St. R., 220, if we consider only the language of the will, is an authority in favor of the plaintiff and one we believe that stands alone. It was there held that a bequest of the interest of a fund payable half-yearly to the wife during the term of all her natural life created a separate estate in her; but great prominence is given to the fact, both in the opinion and in the head note, that the husband had cruelly treated his wife, had received a large estate from her, and had never made any settlement upon her, but had deserted her, taking away all the furniture and making no provision for her maintenance.

Our conclusion is that there is nothing in the will which can be construed so as to exclude the husband from such

rights as he has by law in the personal property of his wife. And what are these rights?

At common law the right to receive the entire income would have vested in him as soon as the will became operative, to the absolute exclusion of the wife. But his rights are now limited and modified by statute. Under the act of 1849, (General Statutes, p. 186, sec. 3,) which controls this case, the same personal property coming to the wife which became absolutely the husband's at common law, vests in him as her trustee, subject to the uses specified in the statute.

But the plaintiff says that whatever right was conferred on the husband by the above statute has been taken away, as to the property now in question, by the act of 1878, which provides that "all property hereafter acquired by any married woman shall be 'held by her to her sole and separate use."

The argument for the plaintiff in support of this claim seems to rest upon a misconception of the nature of the property that passed by the will, and this error logically begets another after its kind respecting the time when the property of the wife was acquired.

It is insisted that the property in question consists only of certain dividends and income which are not *acquired* till actually paid, or at least until they have become payable.

According to this theory there was not simply one acquisition or transfer of property under the will to the wife, but a hundred or more, according to the actual number of dividends that may have been paid during the fifteen years that have elapsed since the decease of the testator.

But the property bequeathed to Mrs. Vail was a life estate in a fund of twenty thousand dollars (over and above the advancement) set apart as her share for her use, and she had an absolute right (not depending on the discretion of the trustees) to receive "all the rents, dividends, increase and income" from that fund during her life, and that right was "acquired" once for all when the will became operative by the decease of the testator. As to the time of the

acquisition it is the same as if the bequest had been the life use, rents and profits of real estate. The property in such case would never be considered as acquired when the first harvest occurred, or the first rent became payable, and thereafter newly acquired with each succeeding harvest or each payment of rent, but the right of property would be by one acquisition, at one and the same time, by one operation of the will. There would be one, and only one, right to all future harvests and future rents.

In confirmation of our views we refer to the case of *Sterns* v. *Weathers, Adm'r*, 30 Ala., 712, which was an action of assumpsit by a widow against the administrator of her deceased husband for the avails of a legacy which had gone into the husband's hands. The plaintiff's father died in 1847, leaving a will giving five hundred dollars to her, then a married woman. The will was proved in January, 1848, and the legacy was not paid until November 8th, 1849. A statute was passed in 1848, providing that "if any such estate shall after marriage by descent, gift, devise or otherwise, *accrue* to any married woman, such property shall be her separate estate." The question, as in the case at bar, turned on the time when the legacy "*accrued*," which the court held was at the death of the plaintiff's father, in 1847, and not at the time it was paid over.

There is we believe no case in principle to the contrary. Since the argument, our attention has been called to *Phelps* v. *Farmers & Mechanics Bank*, 26 Conn., 269, as supporting the reasoning of the plaintiff's counsel. Under the provisions of the defendant's charter certain charitable corporations had from time to time, prior to 1852, subscribed for sundry shares of the stock of the bank. In 1857, the bank, having a surplus fund, (which had gradually accumulated and some part of which had been earned before the subscriptions in question,) declared an extra dividend from this surplus of fifteen per cent. to all stockholders, including these charitable corporations. The plaintiff sought by injunction to restrain the bank from paying the dividend to the last named corporations; which the court

refused to do, because it was said that the profits of a bank until separated from the stock were a mere increment and augmentation of the stock, and would pass under the name of stock either by contract, bequest or levy of execution; which was manifestly correct. But suppose a life estate had been created in the stock by contract or bequest, is it not too obvious for argument that the court never would have held that the profits were a mere augmentation of the stock and that the dividends out of the surplus fund must pass into the hands of the owner of the stock itself in defiance of the terms of the contract or bequest? Indeed ELLSWORTH, J., on page 272, by anticipation guards against any such misapplication of the principle by recognizing the fact that it would be possible by contract or otherwise to impress a different character on the profits, which might in legal effect separate them from the stock.

For these reasons we advise the Court of Common Pleas that Thomas J. Vail is entitled to receive from the trustees under the will the income in question as the statutory trustee of Mary J. Vail, the plaintiff.

In this opinion the other judges concurred.