**CHANDLER v. FIELD, Collector of Internal Revenue.**

No. 700.

District Court, D. New Hampshire.

April 11, 1932.

Demond, Woodworth, Sulloway & Rogers, of Concord, N. H., for plaintiff.

Raymond U. Smith, U. S. Atty., of Concord, N. H., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Percia E. Miller, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

MORRIS, District Judge.

This is an action brought by John P. H. Chandler of Portsmouth, N. H., against John H. Field, collector of internal revenue for the district of New Hampshire, for the recovery of a portion of the federal income tax paid by him for the year 1925.

In the return filed by Chandler March 10, 1926, for the calendar year of 1925, the plaintiff showed a tax due in the amount of $2,382.99, which was paid in installments during the year 1926.

Subsequently, the Commissioner of Internal Revenue audited Chandler's return, and as a result assessed against the plaintiff an additional tax for said year 1925 in the sum of $21,772.28, which was paid on April 30, 1928.

On March 10, 1930, the plaintiff filed with the defendant a claim for refund of a part of the tax paid, and the claim was denied by the Commissioner in a letter June 13, 1930, and this suit was thereupon instituted.

The case comes before me upon an agreed statement of facts excepting that the parties were unable to determine and agree upon the age of the plaintiff.

Plaintiff's deposition was taken, and from it I find as a fact that John P. H. Chandler, the plaintiff, was born in Washington, D. C., March 22, 1885, and was the son of United States Senator, William D. Chandler of New Hampshire.

The tax which is the subject of refund was assessed upon shares of stock in the St. Joseph Lead Company which the plaintiff received under the will of his mother, Lucy L. H. Chandler, who died October 25, 1915.

The only material clause in the will reads as follows:

"Seventh: All the rest, residue and remainder of my property and estate of every kind and description, I give, bequeath and devise to my executors in trust for the following purposes:

"All the income of said property and estate, after the decease of my said husband, as aforesaid, to be paid by said trustees to my son John P. Hale Chandler at such times as they may deem proper; the sum of One Hundred and Fifty Dollars a year to be paid quarterly, to my maid, Lydia E. Buzzell, during her life, provided she remains with me as such maid until my decease; one third of the principal of said property and estate, after allowing for the payment of said sum to said Lydia E. Buzzell, to be paid to my said son when he shall arrive at the age of thirty years; one third to be paid to him when he shall arrive at the age of thirty five years; and one third when he shall arrive at the age of forty years. If, however, my son should not live to reach the ages herein specified and should die leaving children, then said trustees are to pay over to said children the entire amount of said property and estate or the entire amount of the balance thereof in case payment or payments to my said son have been made as aforesaid. And in case my son should die leaving no children living at the time of his death, I give and bequeath to his wife Madeleine if then living, the sum of Ten Thousand Dollars, and then said trustees are to pay over the sum of Five Hundred Dollars to the Episcopal Church in Dover, New Hampshire (in memory of my grandmother, Abagail R. Lambert, and my aunt Elizabeth Little), then the one-half of said property and estate remaining to be paid to the Unitarian Church in said Dover, (one-half of the income thereof to be used for the Pastor's

salary): The other one-half of said property and estate to be paid in equal amounts to the Children's Home, to the Wentworth Home for the Aged in said Dover, (in memory of my parents and sister), to the Hayes Hospital in said Dover, and to the New Hampshire Society for the Prevention of Cruelty to Animals.".

As above stated in the will, the plaintiff was to receive his share of the principal after the execution of the trust in three installments; the first when he became thirty years of age; the second when he became thirty-five years of age; and the third and last installment when he reached the age of forty.

During the year 1925, the plaintiff sold a number of shares of stock of the St. Joseph Lead Company. We are concerned in this action with only a part of those shares, to wit, 753 shares which were received by the plaintiff under the will of his mother. The plaintiff's claim for refund is based solely upon the basis used by the Commissioner of Internal Revenue in determining gain from the sales by the plaintiff of the 753 shares of stock.

The Commissioner, in determining the gain from the sales, used as a cost basis the value of said stock at the date of the death of the plaintiff's mother. In other words, the Commissioner has determined the gain by deducting from the selling price of the stock its value at the date of the death of Lucy L. H. Chandler.

It is contended by the plaintiff that there should be used as the basis for determining gain or loss the value of said stock at the date of its delivery to him. The 753 shares were actually delivered to the plaintiff by the trustees as follows: 660 shares on April 19, 1920; 75 shares on July 15, 1925; 18 shares on August 24, 1925.

The 93 shares which were distributed by the trustees in 1925 were sold during the same year for $3,817.53. The selling price of 660 shares which were distributed by the trustees in 1920 is not known, inasmuch as this block of stock was sold by the plaintiff together with 4,140 additional shares from the same company, and the sale which represents the 660 shares cannot be identified; 4,800 shares of the stock of the St. Joseph Lead Company (4140 + 660) were sold for $210,337.76. The cost basis of the 4,140 shares of stock is $31,400.50. The gain from the sale of the entire 4,800 shares was determined by the Commissioner to be $170,-357.26. If the government's position as to the cost basis for determining the gain from the sale of the stock is sustained, no change is to be made in the amount of this gain. If the taxpayer's position is sustained, then the gain from the sale of said 660 shares of stock shall be determined by deducting from the selling price of $210,337.76 the sum of $31,400.50, plus the cost basis as finally determined in this case.

The question to be determined is whether the basis date to be used in determining the gain or loss on the sale of the stock acquired by Chandler under the will of his mother is the value of said stock at the date of her death or its value at the date the stock was actually distributed to Chandler.

The applicable statutes and department regulations thereunder are as follows:

The Revenue Act of 1926 (section 204, 26 USCA § 935 (a), (5), provides in part as follows:

"Sec. 204 (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—* * *

"(5) If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition. The provisions of this paragraph shall apply to the acquisition of such property interests as are specified in subdivision (c) or (e) of section 402 of the Revenue Act of 1921, or in subdivision (c) or (f) of section 302 of the Revenue Act of 1924, or in subdivision (c) or (f) of section 302 of this Act."

Regulations 69, Revenue Act of 1926, article 1594, provides in part as follows: "In the case of property acquired by bequest, devise, or inheritance, its value as appraised for the purpose of the Federal estate tax or in the case of estates not subject to that tax, its value as appraised in the State Court for the purpose of State inheritance taxes shall be deemed to be its fair market value when acquired."

The Treasury Department appears to have consistently held that the basic date for determining gain or loss on the sale of property acquired by bequest, devise, or inheritance is that of the decedent's death. This fact is evidenced by various regulations which have been promulgated from time to time. Paragraph 44 of Regulations 33 (1918); article 1562 of Regulations 45 (1919); article 1562 of Regulations 56 (1920); article 1563 of Regulations 62

(1922); article 1594 of Regulations 65
(1924); article 1594 of Regulations 67
(1926); article 1594 of Regulations 69
(1926).

The question narrows itself to the interpretation of the word "acquisition" as it appears in the context of the statute.

As I understand, the agreed statement of facts interpreted in conjunction with the declaration in the writ, if the plaintiff's contention is sustained, he is entitled to a refund of $762.62. If the defendant's contention is sustained, he is entitled to a verdict.

In the case of Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 116, 74 L. Ed. 457, it was held that the basis of calculation in the case of stocks acquired by the taxpayer as a residuary legatee and sold by him is not their value at the date of the decree of distribution, but their value at the date of the testator's death.

The plaintiff seeks to distinguish the Brewster Case from the case at bar, and calls attention to the fact that in the Brewster Case the stock passed at once upon the settlement of the estate to the residuary legatee, while in the case at bar there was an intervening trust under which the stock was held by trustees in trust to pay the income to a life tenant. Plaintiff further seeks to distinguish the two cases pointing out that in the Brewster Case the residuary legatee took the entire title to the property subject to administration expenses, and, if he died before receipt of the same, it passed to his heirs, whereas in the instant case the plaintiff took a vested remainder subject to be divested, if he died without issue before reaching the specified age.

The court can see that the facts in the two cases are easily distinguishable, but to my mind the distinguishable features are not of such a character as to make the holdings of the Supreme Court in the Brewster Case inapplicable. It is true that the plaintiff in the case at bar might never have received his share of the property. What then would have been the situation presents another question. He did receive it, and that is the fact with which we are dealing. Whatever rights he finally acquired date back to the death of his mother. That was the date of their inception. Those rights continued uninterruptedly from the date of her death until the stocks were physically delivered to the plaintiff.

In the Brewster Case Mr. Justice Butler says: "Petitioner's right later to have his share of the residue vested immediately upon testator's death. At that time petitioner became enriched by its worth, which was directly related to and would increase or decline correspondingly with the value of the property. And, notwithstanding the postponement of transfer of the legal title to him, Congress unquestionably had power and reasonably might fix value at the time title passed from the decedent as the basis for determining gain or loss upon sale of the right or of the property before or after the decree of distribution. And we think that, in substance, it would not be inconsistent with the rules of law governing the descent and distribution of real and personal property of decedents to construe the words in question to mean the date of death."

In the same case the court further calls attention to various regulations of the Treasury Department in force between 1917 and 1928 establishing as a basis for gain or loss the fair market value of the property at the date of the death of the testator, and further calls attention that since 1917 Congress in the passage of the several revenue acts has not changed the meaning and still uses the word "acquired." The interpretation given to it has continued for a series of years, and for so long as to imply that the construction given to it by the administrative board having to do with the collection of revenue has received legislative sanction.

On this point Judge Butler says: "These regulations were prepared by the Department charged with the duty of enforcing the acts. The rule so established is reasonable and does no violence to the letter or spirit of the provisions construed. A reversal of that construction would be likely to produce inconvenience and result in inequality. It is settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons. Logan v. Davis, 233 U. S. 613, 627, 34 S. Ct. 685, 58 L. Ed. 1121; Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 64 L. Ed. 297; Swendig v. Washington Water Power Co., 265 U. S. 322, 331, 44 S. Ct. 496, 68 L. Ed. 1036."

The interpretation given to the word "acquired" in the revenue acts appears also to be in accord with the rulings of the highest courts in several states and various textwriters. See Matter of Lansing, 182 N. Y.

238, 74 N. E. 882; Hardy v. Boaz, 29 Ala. 168; Vail v. Vail, 49 Conn. 52; Schouler on Wills (6th Ed.) § 3148.

I do not think it is essential to enter into a discussion of the differences between a vested remainder, contingent remainder, executory devise, and other forms of title known to the common law.

I hold that whatever title the plaintiff took dates back and was acquired on October 25, 1915, when his mother died.

A verdict will be entered for the defendant.