**LANE v. CORWIN, Collector of Internal Revenue.**

**No. 4972.**

**District Court, E. D. New York.**

**July 5, 1932.**

Kellogg, Emery & Inness-Brown, of New York City (J. Fearon Brown, of New York City, of counsel), for plaintiff.

Howard W. Ameli, U. S. Atty. (A. D. Smith, Asst. U. S. Atty., both of Brooklyn, N. Y., and C. M. Charest, Gen. Counsel, and E. E. Angevine, Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

MOSCOWITZ, District Judge.

This is a motion for judgment on the pleadings in an action brought for the recovery of $14,247.51, with interest, alleged to have been illegally collected from the plaintiff by the defendant, who is collector of internal revenue of the United States for the First district of New York, as income tax for the calendar year 1928.

A similar motion has been made in the action entitled James W. Lane, Jr., Plaintiff v. Walter E. Corwin, Collector of Internal Revenue for the First District of New York, Defendant No. L–4973.[1] The action in that case is to recover the sum of $14,167.60.

The facts in each case are the same; the only difference is in amounts. The motion is based upon the complaint and answer; the facts are not in dispute.

For convenience, the court will refer to the plaintiff in this action and the plaintiff in the action of James W. Lane, Jr., v. Walter E. Corwin, Collector of Internal Revenue for the First District of New York, L–4973, in which action a similar motion is made, as the plaintiffs.

On October 29, 1922, Eva B. Lane, a resident of Suffolk county, N. Y., and mother of the plaintiffs, died, leaving a will wherein, among other things, she devised to certain trustees named in the will, for the benefit of the plaintiffs and two other sons, a certain piece of property described as lot 2, section 10, block 5832, borough of Brooklyn, and commonly known as "Owls Head Park," at Sixty-Eighth street and Colonial road. The trust was for the duration of the lives of the plaintiffs. It was further provided that the trustees, acting unanimously and in their discretion, could terminate the trust in whole

[1] No opinion.

or in part at any time and distribute the corpus thereof to the beneficiaries, and also, if it was decided to terminate the trust, the trustees should immediately convey the legal title of the real property equally to all of the sons of the testatrix.

The value of the tract in question at the date of death of the testatrix was $379,500.00, at which value it was returned for federal estate tax purposes.

On June 8, 1928, the trustees conveyed the property to the four sons of the decedent by appropriate deed. Subsequently, and on August 20, 1928, the plaintiffs and the two other sons duly conveyed the tract to the city of New York for park purposes in consideration of a purchase price of $835,000. On their income tax returns filed for the year 1928, the plaintiffs, in reporting their income derived from the sale of the property, treated their interest as having been acquired on June 8, 1928, and as having a value on that date of $208,750, or one-fourth of $835,000, the price for which it was sold about two months later, and reported no gain or loss from the transaction.

Subsequently, and upon an audit of the returns so filed, the Commissioner of Internal Revenue determined that the plaintiffs had acquired their interest in the property in question upon the death of their mother, on October 29, 1922, and that their respective interests had a value on that date of $94,875, or one-fourth of $379,500, the value of the entire tract on that date. As a result, the Commissioner of Internal Revenue assessed against the plaintiff the additional taxes sought to be recovered, which were duly paid to the defendant, as collector of internal revenue. Proper claims for refund of the amounts so paid were timely filed and rejected in full by the Commissioner of Internal Revenue, whereupon these actions were begun.

The pertinent parts of the decedent's will are as follows:

"C. (a) I give, devise and bequeath to my Trustees hereinafter named, all of the pieces and parcels of real estate now owned by me in the Borough of Brooklyn, County of Kings, State of New York, and belonging to me at the time of my death, wheresoever situated therein, and whether contiguous or not, and whenever and however the same have been acquired by me, with all buildings, improvements, easements and appurtenances of every nature and description relating to or connected with the same. * * *

"(b) All of the foregoing assets shall be held and disposed of by my Trustees, their successors and assigns, upon the trusts, and with the powers set forth in this Clause Second, Subdivision E, paragraphs a to i inclusive, of this will. * * *

"(c) The duration of the said trust shall be the lives of my sons, James W. Lane, Jr., and George Bliss Lane, or if either of them predecease me, then the lives of the youngest two of my sons who shall survive me, provided, however, that my individual Trustees hereinafter named and their successors, (including the corporate Trustee if it shall act as sole Trustee as hereinafter provided) shall, in case they have sold all or any portion of the said real estate, have power in their unrestricted discretion, to distribute at one time or from time to time the proceeds of any such sale or sales among the persons entitled thereto as stated in this Subdivision C, paragraph (e), and to terminate the trust as to all amounts thus distributed. * * *

"(d) I direct my Trustees to receive all of the net rents, income, profits and increment from and of any and all securities, assets and property now or hereafter held in trust hereunder, and to pay over the balance in equal parts and at quarterly periods during the existence of the trust to each of my sons, Mortimer Bliss Lane, Arthur Bliss Lane, James W. Lane, Jr., and George Bliss Lane. * * *

"E. I give, devise and bequeath unto my Executors and Trustees hereinafter named those parts of the respective shares or portions of my said sons or issue of deceased sons which they will not be entitled to receive immediately upon my death.

"In trust, however, to hold, manage and dispose of the same as hereinafter authorized, to wit: * * *

"i. I further direct my said Trustees to receive the rents, profits, income and interest from the various portions thus held pursuant to the respective trusts created hereunder, and to pay the same to the beneficiaries of said trusts during the respective periods thereof."

The only question for determination is the value to be used in determining the gain or loss upon the sale of the property, whether the value should be fixed at the date of death of the testatrix, or its value at the date of distribution to the plaintiffs.

The statute and regulations involved are as follows:

Revenue Act of 1928, 45 Stat. 791, 26 USCA § 2113 (a) (5):

Section 113: *"Basis for Determining Gain or Loss*

"(a) Property Acquired After February 28, 1913. The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that— * * *

"(5) Property transmitted at death. If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death. * * * *"

Regulations 74, Bureau of Internal Revenue:

"Art. 596. Property transmitted at death.—In the following cases the basis for determining gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the fair market value of the property at the time of the death of the decedent:

"(1) Personal property acquired by specific bequest;

"(2) Real property acquired by general or specific devise or by intestacy; and

"(3) Property, whether real or personal, in the hands of a decedent's estate, acquired by the estate from the decedent (see article 863).

"In all other cases where property was acquired either by will or by intestacy after February 28, 1913, the basis shall be the fair market value of the property at the time of its distribution to the taxpayer.
* * *

"For the purposes of this article, the value of property as appraised for the purpose of the Federal estate tax or in the case of estates not subject to that tax, its value as appraised in the State court for the purpose of State inheritance taxes shall be deemed to be its fair market value at the time of the death of the decedent."

If the value to be used in determining the gain or loss upon the sale of the property in question is the date of the death of the testatrix, plaintiffs are not entitled to recover.

The decedent died in 1922, at which time the property in question had a value of $379,500, of which the plaintiffs received one-fourth interest each. The property was distributed to the plaintiffs and two other brothers by having the legal title conveyed to them in 1928. Two months later, and in the same year, the property was sold for $835,000.

■ A reading of the will, the pertinent portions of which have been set forth in the opinion, indicates that the property was conveyed to the trustees to be held for the benefit of the decedent's sons, and that, upon a termination of the trust, they were each to become seized of an undivided one-fourth interest in the real estate, therefore, at the time of the decedent's death, although the legal title did not vest in the decedent's sons, they acquired a beneficial interest in the property, which beneficial interest creates an equitable interest.

Although the legal title was devised to the trustees, the beneficiaries acquired their equitable interest by the same devise, and the trust need not be considered, as it does not affect the interest acquired by the beneficiaries at their mother's death.

■ The interest acquired by the plaintiffs in the property is not a contingent remainder, as there was no contingency upon which the vesting of their interest depended or by which it could be delayed. This court is not bound by the ruling of the New York tax commission, which held that, under the New York state income tax laws, the applicable sections of which are almost identical with the federal law, the plaintiffs did not realize any income from the transaction.

In the case of Brewster v. Gage, 30 F.(2d) 604, 605, the Circuit Court of Appeals, Second Circuit, decided: "It surely was not the intent of Congress that the ac-

quisition of a mere legal title should completely wipe out or render untaxable the gain which had been acquired by the equitable ownership, and which was, in fact, realized upon the sale made when the date of distribution arrived. Moreover, it would be an unfortunate construction, which is not demanded by the statute, that would place it within the power of personal representatives and the real owners, namely, the legatees or distributees, to defer distribution in order to escape tax. This should be avoided."

This decision was affirmed by the Supreme Court. Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 116, 74 L. Ed. 457. That court in affirming the decision of the Circuit Court said:

"Upon the death of the owner, title to his real estate passes to his heirs or devisees. A different rule applies to personal property. Title to it does not vest at once in heirs or legatees. United States v. Jones, 236 U. S. 106, 112, 35 S. Ct. 261, 59 L. Ed. 488, Ann. Cas. 1916A, 316. But immediately upon the death of the owner there vests in each of them the right to his distributive share of so much as shall remain after proper administration and the right to have it delivered upon entry of the decree of distribution. Sanders v. Soutter, 136 N. Y. 97, 32 N. E. 638; Vail v. Vail, 49 Conn. 52; Cook v. McDowell, 52 N. J. Eq. 351, 30 A. 24. Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of the residue. The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of possession in the heirs or legatees, and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of the death. Foster v. Fifield, 20 Pick. (Mass.) 67, 70; Wager v. Wager, 89 N. Y. 161, 166; Thompson v. Thomas, 30 Miss. 152, 158. * * *

"Undoubtedly the basis for the ascertainment of gain or loss on the sale of real estate by an heir or devisee is its value at the time of decedent's death. That is 'the time of such acquisition.' The decree of distribution necessarily is later than, and has no definite relation to, the time when the real estate passes. And generally specific bequests are handed over to the legatees soon after the death of the testator, and such property may be and often is sold by them prior to the entry of the decree for final distribution. In such cases gains or losses are to be calculated under these acts on value at the time of death. No other basis is or reasonably could be suggested. * * *"

In the case of Chandler v. Field, Collector, 58 F.(2d) 370, 373, decided by the United States District Court for the District of New Hampshire, April 13, 1932, the plaintiff was a beneficiary under a testamentary trust created by the will of his mother, who died October 25, 1915. Pursuant to the trust, the trustees in 1920 and 1925 delivered to him a certain number of stocks which he sold in 1925. The collector of internal revenue, in determining the gain or loss from the sale of the stock, used as a basis its value at the date of death of the testatrix, and assessed and collected additional taxes accordingly. The District Court in that case decided against the taxpayer; the court said:

"The plaintiff seeks to distinguish the Brewster Case from the case at bar, and calls attention to the fact that in the Brewster Case the stock passed at once upon the settlement of the estate to the residuary legatee, while in the case at bar there was an intervening trust under which the stock was held by trustees in trust to pay the income to a life tenant. Plaintiff further seeks to distinguish the two cases pointing out that in the Brewster Case the residuary legatee took the entire title to the property subject to administration expenses, and, if he died before receipt of the same, it passed to his heirs, whereas in the instant case the plaintiff took a vested remainder subject to be divested, if he died without issue before reaching the specified age.

"The court can see that the facts in the two cases are easily distinguishable, but to my mind the distinguishable features are not of such a character as to make the holdings of the Supreme Court in the Brewster Case inapplicable. It is true that the plaintiff in the case at bar might never have received his share of the property. What then would have been the situation presents another question. He did receive it, and that is the fact with which we are dealing. Whatever rights he finally acquired date back to the death of his mother. That was the date of their inception. Those rights continued uninterrupt-

edly from the date of her death until the stocks were physically delivered to the plaintiff.

"In the Brewster Case Mr. Justice Butler says:

" 'Petitioner's right later to have his share of the residue vested immediately upon testator's death. At that time petitioner became enriched by its worth, which was directly related to and would increase or decline correspondingly with the value of the property. And, notwithstanding the postponement of transfer of the legal title to him, Congress unquestionably had power and reasonably might fix value at the time title passed from the decedent as the basis for determining gain or loss upon sale of the right or of the property before or after the decree of distribution. And we think that, in substance, it would not be inconsistent with the rules of law governing the descent and distribution of real and personal property of decedents to construe the words in question to mean the date of death.' * * * "

Prior to the enactment of the Revenue Act of 1928, the basis in determining the gain or loss from the sale of property acquired by bequest, devise, or inheritance, was the fair market value of such property at the time of acquisition. The time of acquisition was the date of death. Brewster v. Gage, supra.

The Court of Claims decided the case of McKinney et al. v. United States, 62 Ct. Cl. 180, and the Supreme Court denied application for writ of certiorari, 273 U. S. 716, 47 S. Ct. 108, 71 L. Ed. 855. The Court of Claims in that case, in construing the Revenue Act of 1918 (40 Stat. 1057), is silent as to the basis for determining gain or loss on the sale of property transmitted by death, deciding that the basis for determining the gain or loss on the sale of stock by the executor of an estate is the cost of the property to the decedent, or, where acquired prior to March 1, 1913, its value as of that date, and that, when the stock was acquired by a decedent before March 1, 1913, and sold by the executor for less than cost or March 1, 1913, value, but for more than its appraised value at date of death, no taxable gain resulted. Prior to the decision of McKinney et al. v. United States, supra, the Department had held that the value at date of death was the correct basis in all cases.

There were hearings had before the Ways and Means Committee of the House of Representatives and the Finance Committee of the Senate, on the proposed Revenue Act of 1928. Such hearings may be considered by the court in construing the intent of Congress. The following are excerpts from the Committee Reports:

Report of the Ways and Means Committee of the House on the Revenue Bill of 1928, Report No. 2, at page 18:

"Sec. 113.—Basis for Determining Gain or Loss—Executor's Sale.

"In view of the decision of the Court of Claims in McKinney v. United States, it is desirable specifically to provide what basis shall be used in determining gain or loss on the sale of property by an estate. It is believed that the basis should be the value of the property on the date of the decedent's death, and this rule is incorporated in section 113(a) (5).

"It is also provided, in the same paragraph, that the basis in case of a sale by a beneficiary shall be the value of the property on the date of the decedent's death.

"Under existing law, the basis in such a case is the value at the date of 'acquisition', which is indefinite and has given rise to controversy. The value on the date of death affords an equitable and more readily determinable basis."

Report of the Committee on Finance of the Senate on the Internal Revenue Bill of 1928, No. 960 at page 26:

"Sec. 113.—Basis for Determining Gain or Loss—Executor's Sale.

"The decision by the Court of Claims in McKinney v. United States, has caused confusion in the existing law as to the basis on which an executor must determine gain or loss on the sale by him of property of the estate. The House bill in section 113(a) (5) provides that in such cases the basis shall be the fair market value of the property at the time of the death of the decedent. In the same section the House bill provides the same basis shall be used where the property is sold by the beneficiary.

"It appears that the House bill is inadequate to take care of a number of situations which frequently arise. For example, the executor, pursuant to the terms of the will, may purchase property and distribute it to the beneficiaries, in which case it is impossible to use the value at the decedent's death as the basis for determining subsequent gain or loss, for the decedent never owned the property. Moreover, the fair market value of the property at the decedent's death can not properly be used as the basis, in the case of property transferred in con-

templation of death where the donee sells the property while the donor is living.

"Accordingly, the committee has revised section 113(a) (5) and certain related sections, so as to provide that in the case of a specific bequest of personalty or a general or specific devise of realty, or the transmission of realty by intestacy, the basis shall be the fair market value at the time of the death of the decedent. In these cases it may be said, as a matter of substance, that the property for all practical purposes vests in the beneficiary immediately upon the decedent's death, and therefore the value at the date of death is a proper basis for the determination of gain or loss to the beneficiary. The same rule is applied to real and personal property transmitted by the decedent, where the sale is made by the executor. In all other cases the basis is the fair market value of the property at the time of the distribution to the taxpayer. The latter rule would obtain, for example, in the case of personal property not transmitted to the beneficiary by specific bequest, but by general bequest or by intestacy. It would also apply in cases where the executor purchases property and distributes it to the beneficiary."

These reports indicate that the "other cases" referred to in section 113(a) (5) are those where it is impossible to use the date of death as the basis. The cases at bar do not seem to come within the exception contained in the report of the Committee on Finance of the Senate.

The conclusion which has been reached is that the value of the property at the date of the death of the testatrix governs in determining the gain or loss upon the sale of the property.

The motion made by the plaintiff for judgment is denied.

Settle order on notice.

