## BREWSTER *v.* GAGE, COLLECTOR OF INTERNAL REVENUE.

No. 61. Argued December 6, 1929.—Decided January 6, 1930.

*Messrs. John W. Davis* and *J. Sawyer Fitch,* with whom *Messrs. A. Broomfield* and *Charles Wright, Jr.,* were on the brief, for petitioner.

*Solicitor General Hughes,* with whom *Assistant Attorney General Youngquist,* and *Messrs. Sewall Key, Randolph C. Shaw, Clarence M. Charest,* and *W. H. Trigg* were on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Petitioner's father died testate May 20, 1918. The surrogate's court at Rochester, New York, entered a final decree April 19, 1920, pursuant to which certain stocks

were distributed to the petitioner as one of the residuary legatees. He sold some of them in 1920, 1921 and 1922. For his income tax returns, he computed profit or loss on each sale by comparing the selling price of the stock with its value at the date of the decree of distribution and paid the amounts so determined. But the Commissioner of Internal Revenue held that the values of the stock at the date of testator's death should be taken for the calculation of income, and on that basis assessed for each year an additional tax which petitioner paid under protest. He brought this action in the district court for the western district of New York to recover the amounts so exacted. The court gave judgment for him. 25 F. (2d) 915. The Circuit Court of Appeals reversed. 30 F. (2d) 604.

The taxes for 1920 are governed by the Revenue Act of 1918, 40 Stat. 1057, 1060, 1065, and those for 1921 and 1922 by the Act of 1921, 42 Stat. 227, 229, 237. As defined in these laws, gross income includes gains derived from sales of property but does not include the value of property acquired by bequest, devise or descent. § 213. Section 202(a) in each Act provides that for the purpose of ascertaining the gain derived or loss sustained from the sale of property " acquired " on or after March 1, 1913, the basis shall be its cost. This provision is made more definite in the Act of 1921 by subdivision (3). It provides that, in case of " property, acquired by bequest, devise, or inheritance, the basis shall be the fair market price or value of such property at the time of such acquisition." It is not suggested by either party that this provision changed the law or that the basis for computing the tax for 1920 under the earlier Act is not the same as that applicable for 1921 and 1922 under the later Act. It is necessary to construe the word " acquired " and the phrase " at the time of such acquisition " to determine whether the value of the stock at the time of testator's

death or its value on the date of the decree should be used in the calculation.

. . Upon the death of the owner, title to his real estate passes to his heirs or devisees. A different rule applies to personal property. Title to it does not vest at once in heirs or legatees. *United States* v. *Jones,* 236 U. S. 106, 112. But immediately upon the death of the owner there vests in each of them the right to his distributive share of so much as shall remain after proper administration and the right to have it delivered upon entry of the decree of distribution. *Sanders* v. *Soutter,* 136 N. Y. 97. *Vail* v. *Vail,* 49 Conn. 52. *Cook* v. *McDowell,* 52 N. J. Eq. 351. Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of the residue. The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of possession in the heirs or legatees and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of the death. *Foster* v. *Fifield,* 20 Pick. 67, 70. *Wager* v. *Wager,* 89 N. Y. 161, 166. *Thompson* v. *Thomas,* 30 Miss. 152, 158.

Petitioner's right later to have his share of the residue vested immediately upon testator's death. At that time petitioner became enriched by its worth which was directly related to and would increase or decline correspondingly with the value of the property. And, notwithstanding the postponement of transfer of the legal title to him, Congress unquestionably had power and reasonably might fix value at the time title passed from the decedent as the basis for determining gain or loss upon sale of the right -or of the property before or after the decree of distribution. And we think that in substance it would not be incon-

sistent with the rules of law governing the descent and distribution of real and personal property of decedents to construe the words in question to mean the date of death.

Undoubtedly the basis for the ascertainment of gain or loss on the sale of real estate by an heir or devisee is its value at the time of decedent's death. That is "the time of such acquisition." The decree of distribution necessarily is later than; and has no definite relation to, the time when the real estate passes. And generally specific bequests are handed over to the legatees soon after the death of the testator and such property may be and often is sold by them prior to the entry of the decree for final distribution. In such cases gains or losses are to be calculated under these Acts on value at the time of death. No other basis is or reasonably could be suggested.

There is nothing in either of the Acts or in their legislative history to indicate a purpose to establish two bases— (1) value of real estate and specific bequests at time of death and (2) value of other property at date of decree. The rule that ambiguities in tax laws are to be resolved in favor of taxpayers has no application here because it is impossible to determine which basis would impose a greater burden. And neither construction is to be preferred on the ground that the other would raise serious question as to constitutional validity. The generality of the words used in both Acts indicates intention that the value at the time of death of the decedent was to be taken as the basis in all cases.

The Revenue Act of 1918 and subsequent Acts taxed incomes of estates during the period of the administration including profits on sales of property, and such gains are calculated on value at date of decedent's death.*

---

*§ 219, Revenue Act of 1918, 40 Stat. 1071; Regulations 45, Art. 343.
§ 219, Revenue Act of 1921, 42 Stat. 246; Regulations 62, Art. 343.
§ 219, Revenue Act of 1924, 43 Stat. 275; Regulations 65, Art. 343.
§ 219, Revenue Act of 1926, 44 Stat. 32; Regulations 69, Art. 343.

There appears to be no reason why gains or losses to the estate should be calculated on one basis and those to the residuary legatees on another.

Treasury Regulations under the Revenue Acts in force between 1917 and 1928 declared that value at time of the death of decedent should be taken as the basis for ascertaining profit or loss from sale of property acquired by bequest or descent since February 28, 1913. Regulations 33, Revised, paragraph 44, promulgated with reference to § 2(a), Revenue Act of 1916, provided that in computing profit or gain upon property acquired by inheritance, the basis should be appraised value at the time of decedent's death. Regulations 45, Art. 1562, promulgated with reference to § 202 of the Revenue Act of 1918 declared that " for the purpose of determining the profit or loss from the sale of property acquired by bequest, devise or descent since February 28, 1913, its value as appraised for the purpose of the federal estate tax . . . should be deemed to be its fair market value when acquired." And value at the time of death is the basis of that appraisal. § 402. 40 Stat. 1097. Regulations 62, Art. 1563, under the Act of 1921 are substantially to the same effect as the earlier regulations.

These regulations were prepared by the department charged with the duty of enforcing the Acts. The rule so established is reasonable and does no violence to the letter or spirit of the provisions construed. A reversal of that construction would be likely to produce inconvenience and result in inequality. It is the settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons. *Logan* v. *Davis*, 233 U. S. 613, 627. *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, 349. *Swendig* v. *Washington Water Power Co.*, 265 U. S. 322, 331.

The meaning of " acquired " in § 202(a) of the Act of 1918 was not changed by and in context means the same as does the phrase " time of such acquisition " in the corresponding provision of the Act of 1921.   And that phrase was continued in § 204(a) (5) of the Revenue Acts of 1924 and 1926.   43 Stat. 258.   44 Stat. 14.   The regulations promulgated under that section are substantially the same as the earlier regulations.   Regulations 65, Art. 1594.   Regulations 69, Art. 1594.   The substantial re-enactment in later Acts of the provision theretofore construed by the department is persuasive evidence of legislative approval of the regulation.   *National Lead Co.* v. *United States*, 252 U. S. 140, 146.   *United States* v. *Cerecedo Hermanos y Compañia*, 209 U. S. 337, 339.   *United States* v. *G. Falk & Brother*, 204 U. S. 143, 152.   The subsequent legislation confirmed and carried forward the policy evidenced by the earlier enactments as interpreted in the regulations promulgated under them.

The Revenue Act of 1928, § 113(a) (5), expressly established value at the time of the death of the decedent as the basis of calculation in respect of sales of personal property acquired by specific bequest and of real estate acquired by general or specific devise or by intestacy, and in all other cases fixed fair market value at the time of distribution to the taxpayer as the basis.   45 Stat. 819. The deliberate selection of language so differing from that used in the earlier Acts indicates that a change of law was intended.   Ordinarily, statutes establish rules for the future, and they will not be applied retrospectively unless that purpose plainly appears.   *United States* v. *Magnolia Co.*, 276 U. S. 160, 162, and cases cited.   There is no support for the suggestion that subdivision (5) expressed the meaning, or was intended to govern or affect the construction, of the earlier statutes.

*Judgment affirmed.*