616

## C. A. COCHRAN, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 37774, 45081.   Promulgated June 8, 1931.

*John E. Hughes*, *Esq.*, and *William Cogger*, *Esq.*, for the petitioner.

*J. Arthur Adams*, *Esq.*, and *Frank A. Surine*, *Esq.*, for the respondent.

OPINION.

SMITH: The respondent has treated the transaction in question as an installment sale made in 1919 and in computing the petitioner's gain thereon has used as a cost base the value of the petitioner's interest in the real estate at the date of the death of the petitioner's father, April 12, 1913. The respondent's position is that the petitioner acquired the property at that time under the provisions of his father's will. The petitioner contends that he acquired the property upon the death of his mother on June 9, 1921, and that the value at that date is the proper base to be used in computing the gain, if any, realized by him upon the sale. The petitioner further contends that his taxable profit in the years involved should be computed under the capital gain provision of the Revenue Act of 1924.

Construing Item 12 of the will, it seems to us that the plain intent of the testator and the import of the words used by him in his will was to leave the petitioner's mother a life estate only in the residue of his estate, with the remainder over to the petitioner. The fee to the real estate in question, which fell into the residue of the estate, therefore vested in the petitioner at the date of his father's death. *Brewster* v. *Gage*, 280 U. S. 327. The mother was to " have " and " enjoy " the property during her lifetime. These words indicate a limitation of her estate to a life interest only. We do not think that she could have dissipated or disposed of the property for her own advantage to the detriment of the petitioner's vested remainder interest. Upon her death the " said residue " was to go " absolutely and in fee simple " to the petitioner.

The rule is stated in Thompson on Real Property, vol. 2, p. 207, that " courts are inclined to construe estates as vested unless there appears a clear intention that the testator meant otherwise " and

that an early vesting of the remainder is favored. The laws of the State of Ohio, as applied in the cases cited by the respondent, seem to favor this construction. See *Collins* v. *Collins*, 40 Ohio State 353; *Linton* v. *Laycock*, 33 Ohio State 128. We think that the petitioner acquired his interest in the real estate in question upon his father's death under the above quoted clause of the will and that the value of such interest on that date is the base to be used in computing the gain or loss upon its subsequent sale. *Brewster* v. *Gage, supra.*

We think that the respondent is also correct in his determination that the sale of the real estate in question took place in 1919 when the so-called option agreement was executed and its performance undertaken. While the agreement is styled "Option" it does not differ materially from an ordinary sales contract. In substance the Realty Company agreed to pay a total purchase price of $165,000 for the entire tract of land in yearly installments of not less than $20,000 for a period of six years. The petitioner and others agreed to convey title to a proportionate part of the land each year. This they were bound to do as long as the Realty Company made its agreed yearly payments. The retention of title to a portion of the land by the vendors merely afforded them a more direct method of protection in case of default by the Realty Company. The effect was the same as if they had conveyed the entire property to the Realty Company and had retained a first trust or mortgage to secure full payment of the purchase price. The provision that the Realty Company might elect to pay the entire purchase price and secure a deed to the remainder of the property at any time while the agreement was in force was in the nature of an option, since it permitted an acceleration of the performance of the contract, but this did not in any way affect the other provisions of the agreement. We have held in a number of cases involving similar questions that agreements not materially different from the one here under consideration evidenced an installment sale. See *Pacific Coast Redwood Co.*, 5 B. T. A. 423; *J. T. Pittard*, 5 B. T. A. 929; *Pacheco Creek Orchard Co.*, 12 B. T. A. 1358. In *Pacific Coast Redwood Co., supra*, we said:

With respect to the contract to sell the real property, the buyer agreed to pay $2,500,000 to the taxpayer. Six hundred thousand dollars was paid on the execution of the contract and the balance was to be paid in installments within a period of three years. The contract had the usual provisions reserving the title in the seller until all payments were made, gave the seller the right of repossession in case of failure to make payments, and provided for forfeiture of all rights and all money paid as liquidated damages in case of default. The buyer had the right of possession and the right to remove timber. He could not assign the contract without the written consent of the seller. There were no notes, mortgages, or other securities given by the buyer other than the provisions of the contract. Payments subsequent to the initial payment of $600,000 were made as set out in the findings of fact.

Cf. *North Texas Lumber Co.*, 7 B. T. A. 1193; affd., *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11; *Friend M. Aiken*, 10 B. T. A. 553; affd., *Aiken* v. *Commissioner of Internal Revenue*, 35 Fed. (2d) 620.

Even regarding the agreement as an option to purchase, we think that such option was exercised during the year 1919 when the Realty Company took possession of the property and commenced the performance of its part of the agreement.

It is evident, of course, that if the petitioner and his mother sold their respective interests in the real estate in 1919 the petitioner gained no additional interest therein upon his mother's death in 1921. The petitioner's remainder interest was conveyed before it ripened into an absolute fee, since he sold such interest prior to the termination of the intervening life estate. The record before us does not show whether the respondent in his computation of the petitioner's profits from the sale of the property has made proper allowance for the value of the life tenant's interest, nor do we have the facts necessary for such determination. However, at the hearing counsel for the petitioner admitted that the respondent has correctly computed the petitioner's taxable gain upon the sale of his interest in the property in question upon the installment sale basis, subject to the questions raised as to the date of petitioner's acquisition of his interest and the date of the sale. We therefore hold that the respondent has correctly computed the petitioner's tax liability for the years 1924, 1925, and 1926.

*Judgment will be entered for the respondent.*