JAMES KLEIN BOWEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46787.   Promulgated February 28, 1933.

*Rowland Carr, C. P. A.*, for the petitioner.
*O. J. Tall, Esq.*, for the respondent.

OPINION.

MATTHEWS: 1. The first issue raised in this proceeding is with respect to a loss claimed in 1926 and involves an agreement made by the petitioner to settle for the sum of $200,000 an action at law brought by one Baker against the petitioner and a corporation, of

which he was apparently president, in the Supreme Court of New York County, New York, and at the time of the agreement on trial in that court. The agreement which was put in evidence is referred to variously as a "judgment," and a "court order," but it appears on its face to be a settlement agreement by the parties to the action. The petitioner alleges in his petition that he was accommodation endorser for an insolvent corporation and that a judgment was entered against him for $200,000 on this note. It was shown that a portion of this amount was paid by petitioner in 1926, was claimed in his 1926 return, and was allowed as a loss by the respondent in that year. The only question is whether the whole amount should have been allowed in 1926.

The petitioner explains in detail in his petition that "he kept no formal set of books" and that there was "no formal book record * * * of notes payable." We must conclude that his accounts, such as they were, were kept on the basis of cash receipts and disbursements, and we have so found. *John A. Brander*, 3 B. T. A. 231; *Wilson Marks*, 6 B. T. A. 729.

The petitioner contends, however, that the full amount of $200,000, said to be the sum named in the court's judgment, was a loss sustained in 1926 notwithstanding the petitioner's cash basis; and in support of this contention relies on *S. R. Davis*, 9 B. T. A. 755, as reversed without opinion by the Circuit Court of Appeals (7th Circuit) on October 24, 1928, and on our decision in *A. W. D. Weis*, 13 B. T. A. 1284, in which we distinguished the *Davis* case; and on certain other cases.

Since these cases were decided the Supreme Court has ruled upon the question in *Eckert* v. *Burnet*, 283 U. S. 140. There the taxpayer on the cash basis was, with a partner, joint endorser of paper of a corporation which they had formed. The corporation was unable to pay and in 1925 the endorsers took up the corporation's note and gave their own in exchange. In answer to the taxpayer's contention, Holmes, J., said:

* * * A deduction may be permissible in the taxable year in which the petitioner pays cash. The petitioner says that it was definitely ascertained in 1925 that the petitioner would sustain the losses in question. So it was, if the petitioner ultimately pays his note. So was the tax considered in *United States* v. *Mitchell*, 271 U. S. 9, 12, 46, but it could not be deducted until it was paid.

We do not see anything in the present case to take it out of the rule thus laid down. Whether the agreement here was made before or after the judgment does not, we think, alter the case. The terms of settlement specifically provided for the postponement of payment of the obligation in full, requiring the payment in 1926 of only $51,041.62. It is not contended by the petitioner that there was paid

in 1926 more than $53,333.28, which included evidently the monthly payment due January 1, 1927. This amount was taken as a loss by the petitioner in his 1926 return and allowed by the respondent. We do not think he was entitled to any greater amount as loss on this account in that year and on this issue hold for the respondent.

2. Our decision of the first question makes necessary our consideration of the three alternative errors assigned. The first of these is that there was credited to petitioner in 1926 on the books of the Bowen Grocery Co., of which he was president, the sum of $8,668.65 which respondent has accordingly added to petitioner's income for that year, on the theory that although petitioner was on the cash basis and may not have actually received this amount in the taxable year, it was properly includable as income under Regulations 69, article 51, which provides that amounts credited to a taxpayer, "without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made", shall be regarded as income constructively received by the taxpayer in the year so credited, "although not then actually reduced to possession". The petitioner challenges the application of this regulation in the present instance on the authority of *William D. Huber*, 12 B. T. A. 1, in which we held that the taxpayer on the cash basis would not receive income from such a credit on a corporation's books when it could be shown that the amount credited could not be withdrawn by taxpayer without serious embarrassment to the corporation.

It is unnecessary for us here to enter upon the merits of this contention, for the reason that the petitioner has failed wholly to substantiate with evidence his allegations (1) that the petitioner did not receive the amount in question as cash in 1926, and (2) that the corporation could not have paid the amount credited in 1926 because of its impending insolvency. A balance sheet of the corporation purporting to prove the latter fact was filed as an exhibit with the petition, but was never put in evidence. Moreover, it is possible that petitioner wished to abandon this issue, for although he made no formal waiver of the error assigned, he stated at the hearing that " I don't think this is a big item, and I am willing to pass over it." In any case, we must sustain the respondent on this issue.

3. The next question is the March 1, 1913, value of three lots situate at 901, 903, and 905, Hamilton Street, Allentown, Pennsylvania, which petitioner sold in 1926. The petitioner relies on the appraisal made by three real estate men in 1926, which, averaged, gave a 1913 value of $222,833.33. The respondent questioned this value and the petitioner had a second appraisal made in 1928 by the Allentown Real Estate Board, which put the 1913 value of the land at $195,000. The respondent accepts the latter as the correct value.

The petitioner contends that since the later valuation is not greatly at variance with the first, it must be taken to establish the soundness of the first. No evidence was introduced by petitioner with respect to the first appraisal, but the appraisal certificate of the Allentown Board was put in evidence by him, and its findings were supported by the testimony of witnesses called by the respondent. Even if we were able to accept the logic of petitioner's contention, we could not in the circumstances do so. We think this issue must be resolved in the respondent's favor, and have so found.

4. This brings us to the final issue, whether 1913 value of certain other lots at 907–909 Hamilton Street inherited by the petitioner before 1913 and sold in 1926 should be diminished, in calculating the gain on the sale, by the value of the life estate held in them by the petitioner's mother. The issue as formulated by the parties under stipulation is set out in our findings of fact. It will be observed that no question is made of respondent's valuation of the fee on March 1, 1913, nor of respondent's method of computing the value of the life estate under Table A, article 13, Regulations 70; but only of the point of law whether the value of the fee should have been reduced by the value of the life estate so found.

The controlling provision, section 204 (a) (5) of the Revenue Act of 1926, is set out in the margin.[1] It was settled by *Brewster v. Gage*, 280 U. S. 327, that the testator's death marks the time of acquisition by the legatee of even personalty included in the residue of the estate, and that this is the basic date therefore upon which gain or loss through a subsequent sale must be reckoned. *A fortiori*, real property, as here, which vests immediately in heirs or devisees upon the testator's death, falls within the same rule. The petitioner here received at his father's death and held subsequently on March 1, 1913, a remainder in fee, subject to his mother's life estate. His interest on March 1, 1913, therefore, was not represented by the value of the fee in 1921 when the life estate fell in through his mother's death, nor the value of the fee in 1913, but of the fee in 1913 diminished by his mother's interest. The reckoning of such an interest by actuarial tables has the Supreme Court's approval. *Ithaca Trust Co.* v. *United States*, 279 U. S. 151. The present case is governed by the rule laid down in *William Huggett*, 24 B. T. A. 669, and we therefore hold on this issue for the respondent.

*Judgment will be entered under Rule 50.*

---

[1] If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition. The provisions of this paragraph shall apply to the acquisition of such property interests as are specified in subdivision (c) or (e) of section 402 of the Revenue Act of 1921, or in subdivision (c) or (f) of section 302 of the Revenue Act of 1924, or in subdivision (c) or (f) of section 302 of this Act.