CAVOUR HARTLEY, EXECUTOR, ESTATE OF G. G. HARTLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42343. Promulgated March 16, 1933.

*Frank W. Wilson, Esq.,* and *H. B. Fryberger, Esq.,* for the petitioner.

*J. A. Lyons, Esq.,* and *B. M. Coon, Esq.,* for the respondent.

954

OPINION.

LANSDON: The income of the petitioner for each of the years 1924 and 1925 included gains from the sale of capital assets, royalties from the production of iron mines held under lease and income from rental properties. In order to determine the correct tax liability for such years, it is necessary to establish the basis upon which gain

from the sales must be computed. Under the applicable statute and regulations effective in those years, such basis must also be used in computing deductions from income on account of depreciation and depletion. In his income tax returns for the years under review, the petitioner computed profits from sales of property and deductions claimed on account of depreciation and depletion on the basis of the values of the several properties at date of decedent's death, but he now contends that the correct basis is that to which the decedent was entitled in his lifetime. In the determination of the deficiencies here involved the respondent accepts the bases used by the petitioner in his original returns. There is no controversy over the facts involved in this issue. The parties have agreed that if the respondent's determinations as to profits, depreciation and depletion are affirmed, no recomputation will be required, and that if the petitioner prevails, the figures necessary to recomputation are not in dispute and are included in the record. We are asked to decide only the question of law upon which the parties differ.

The basis for determining gain or loss from the sale of assets by the executor of an estate was in controversy for many years after the enactment of the first income tax law. In article 343, practically identical in Regulations 45, 62, 65 and 69, interpreting the Revenue Acts of 1918, 1921, 1924 and 1926, the Commissioner included the following:

Where, however, the executor sells property of the estate for more than its value at the death of the decedent, the excess is income taxable to the estate.

Notwithstanding the rule established by the regulations, many executors filed estate income tax returns in which gain or loss was computed on the basis to which the decedent was entitled in his lifetime. Early in the history of the Board proceedings involving this question were instituted and our decisions have quite consistently followed the regulations above cited. *Dorothy Payne Whitney Straight, Executrix*, 7 B. T. A. 177; *Charles G. Barnes et al., Executors*, 8 B. T. A. 360; *William P. Blodgett et al.*, 13 B. T. A. 1243; *Russel Wolfe, Executor*, 15 B. T. A. 835; *Central Trust Co., Executor*, 19 B. T. A. 867; *Richard de Z. Pierce et al., Executors*, 22 B. T. A. 1070; and *James C. Ayer et al.*, 26 B. T. A. 9. The courts very generally have adopted the rule included in the regulations above cited, and the Board's interpretation thereof. *Bankers Trust Co.* v. *Bowers*, 23 Fed. (2d) 901; *Eldridge* v. *United States*, 31 Fed. (2d) 924. Hereinafter this rule will sometimes be referred to as the old basis.

On May 3, 1926, the Court of Claims, in *McKinney* v. *United States*, 62 Ct. Cls. 180, adopted the view that the basis for deter-

mining gain from the sale of capital assets by an estate should be that to which the decedent was entitled in his lifetime. This rule will sometimes be referred to hereinafter as the new basis. Thereafter, on April 6, 1927, the Commissioner abrogated his regulation relating thereto which had been consistently followed for many years and promulgated T. D. 4011, VI-1 C. B. 77, giving effect to such decision. This new regulation remained in effect until July 7, 1928, when the Commissioner, interpreting *Nichols* v. *United States*, 64 Ct. Cls. 246, promulgated April 4, 1927, as a reversal of the decision in *McKinney, supra*, and for the purpose of giving effect to *Dorothy Payne Whitney Straight, Executrix, supra*, and *Banker's Trust Co., supra*, promulgated T. D. 4177, VII-2 C. B. 134, restoring the regulations to their original form. In *Elmhurst* v. *United States*, 69 Ct. Cls. 295, the court reaffirmed its decision in *McKinney, supra*, and undertook to distinguish *Nichols, supra*.

In view of the conflict between the decisions of the Court of Claims, the Board and some Federal courts, and in the light of varying positions of the Commissioner, it is obvious that prior to the enactment of the Revenue Act of 1928 the matter of determining the basis for computing gain from the sale of capital assets by an estate was very much in need of clarification. Many controversies involving the question were pending in the Bureau of Internal Revenue, in the courts and before this Board. Included therein were cases in which returns had been filed prior to April 6, 1927, in accordance with Regulations 45, 62, 65 and 69, and others which had been filed while T. D. 4011 was effective. It was this chaotic condition which the Congress undertook to correct and relieve in the Revenue Act of 1928.

In his report on the provisions of the Revenue Act of 1928, Chairman Green of the Ways and Means Committee said:

In view of the decision of the Court of Claims in the *McKinney* v. *United States*, it is desirable specifically to provide what basis shall be used in determining gain or loss on the sale of property by an estate. It is believed that the basis should be the value of the property on the date of the decedent's death. * * *

Under existing law, the basis in such case is the value at the date of "acquisition" which is indefinite and has given rise to controversies. The value on date of death affords an equitable and more determinable base.

In conformity with the above statement Congress enacted section 113 (5) of the Revenue Act of 1928, which, so far as pertinent herein, is as follows:

*Property Transmitted at Death.*—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be [for determining gain or loss] the fair market value of the property at the time of the death of the decedent. If the property

was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. * * *

The Revenue Act of 1928 was approved on May 29 of that year. On July 7, 1928, the Commissioner promulgated T. D. 4177 as set out hereinbefore and thereafter included the basis then accepted by Congress in article 596 of Regulations 74. The old basis was thus finally established in conformity with the decisions of this Board, of several courts and by Act of Congress as the legal and only rule for determining gain or loss from the sale of property in the hands of an estate in course of administration, but since section 113 (5) of the Revenue Act of 1928 is not retroactive, such basis at May 29, 1928, was settled law only as to the returns filed subsequent thereto. This enactment therefore in no way determined what the law was before the approval of the Revenue Act of 1928. One group of estates had filed returns prior thereto on the old, and another on the new, basis. A decision of the Supreme Court might establish either the one or the other as the law at the several dates of the filing of such returns. No matter which basis was recognized by the court of last resort, the estates filing to their disadvantage on that which was rejected would be entitled to relief if their returns had not been closed by agreement or by the statute of limitations, or their rights abridged by other conditions imposed by proper authority. Congress dealt with this situation by including section 702 (a) in the Act of 1928, which is as follows:

If in the return of any decedent's estate for any taxable year preceding the taxable year 1928, the basis, upon which gain or loss realized upon the sale or other disposition of property acquired by the estate from the decedent was computed, was the value of the property at the time of the death of the decedent or was in accordance with the regulations in force at the time such return was filed, then the computation of such gain or loss shall be made upon such basis, unless claim for refund or credit in respect of such basis, or a written election not to come within the provisions of this subsection has been filed by the estate before the expiration of the period of limitation for filing claims.

In this proceeding the parties are in radical disagreement as to the effect of the election provided for in the law. The petitioner contends that having filed his return under the old, his election now entitles him to a recomputation of his tax liability under the new basis. The respondent has ruled in 9 C. M. 5215, VII–2 C. B. 97, and his counsel argues that Congress intended that only those estates which filed returns on the new basis should have the right of election. In our opinion the purposes of section 702 (a) are twofold. It is a statute of repose for all estates that were satisfied to settle their tax liabilities on the basis in effect when their returns were filed, and it is a relief provision for any estate which to its disadvantage

had filed a return in conformity with regulations at date of filing, if such regulations were later held not to be in accordance with the law then effective. Congress could and did settle the basis to be used for all returns filed subsequent to the effective date of the Revenue Act of 1928, but it did not then know what would be the final judicial determination of the law prior to that date. Accordingly, section 702 (a) was framed to take care of estates coming under whichever basis was finally rejected as the law before the passage of the Act of 1928. It is now well settled that the old basis was the law at the date the petitioner filed his return. *Brewster* v. *Gage*, 280 U. S. 327. The right of election therefore gives him nothing which he did not have before. If he had an appeal pending before the Bureau of Internal Revenue, the Board, or the courts, he could still prosecute on merits, but the computation of his profits from sales of property must be made on the old basis in conformity with *Brewster* v. *Gage, supra*, and *Dorothy Payne Whitney Straight, supra*, and other decisions cited.

If the petitioner had filed his return under the new basis, his election would enable him to litigate his tax liability and he could properly plead that he had acted under a regulation which erroneously construed the law and ask for a redetermination on the basis finally established by judicial authority. It appears, therefore, that the only purpose of section 702 (a) is to permit an estate within the specified categories to elect whether it will settle its tax liability as shown on a return filed in conformity with regulations temporarily effective at date of filing, but later abrogated, or decline to do so and ask for a redetermination under provisions judicially determined to be the law at such filing date.

It will be observed that section 702 (a) does not specifically include any reference to allowances for depletion and depreciation. The parties have argued their respective contentions on the theory that it is not material whether the election grows out of a dispute over such allowance or over gain or loss from the sale of property. Since both are involved here, it is not now necessary to decide whether the subsection under review confers the right of election on those estates as to which the only dispute is over the correct basis for computing gain or loss. This proceeding calls for a determination of the proper basis for computing gain or loss on petitioner's sales of real estate in 1924 and 1925. We have determined that basis and it follows under section 204 (b) (1) of the Revenue Act of 1924 that allowances for depletion and depreciation must be computed in accordance therewith.

In each of the taxable years the respondent disallowed parts of the deductions claimed by the petitioner on account of salaries and expenses, on the theory that the rejected amounts fairly represent the

ratable part of such charges which should be allocated to the management of portions of the estate distributed to the heirs of the decedent and also that some part of such charges was for the management of the "Hartley Family" account. The administration of the "Hartley Family" account was confined to the very simple procedure of receiving rents from the tenants of the four buildings which constituted the corpus of that gift and distributing the same to the beneficiaries. That service required only about three days in each month and for it the manager received a salary of $1,000 per year out of the family fund. Such salary was not claimed as a deduction by the petitioner and is not a basis for the disallowance of its expense claim.

The facts disclose that no part of the estate was distributed in 1924 and that the charges for expenses and salaries claimed as deductions in that year were necessary and reasonable in a business as complicated and extensive as that of the petitioner. The determination of the respondent in this respect for the year 1924 is reversed. It is in evidence that the bulk of the Hartley estate was distributed by the proper court on February 27, 1925, but that such property continued to be managed by the executor's business organization. We conclude from this that petitioner has failed to overcome the presumptive correctness of the respondent's determination that one-half the charges for expenses and salaries in 1925 should be allocated to the management of distributed property then owned by the heirs of the decedent. The determination of the respondent in respect of salaries and expenses for the year 1925 is affirmed.

The petitioner has abandoned his contention that the annuity payments in 1924 and 1925 in the respective amounts of $186.15 and $17,500 are deductible from income in such years. On brief his counsel also concedes that respondent properly disallowed attorney's fees in the amount of $5,000 in the year 1924. It follows, therefore, that the determination of the respondent as to such claimed deductions must be affirmed.

No evidence has been adduced sufficient to enable us to determine that petitioner sustained any loss in 1923. The petitioner contends that the alleged loss resulted from the payment of estate taxes in such years. Even if the proof were sufficient to establish the amount of the loss, it could not be regarded as the basis for net loss to be carried forward in the determination of tax liability in any subsequent year. *H. J. Schlesinger*, 5 B. T. A. 943; *Lawrence J. Montgomery*, 17 B. T. A. 1308. On this issue the determination of the respondent is affirmed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ARUNDELL, VAN FOSSAN, AND MCMAHON concur in the result.

Morris dissents.

Murdock, dissenting: The period within which a claim for refund or credit may be effectively filed begins with the time the tax was paid. The findings of fact do not disclose when any tax was paid. Consequently, I can not determine whether the election was timely filed on July 27, 1928. But assuming that it was timely filed, section 702 (a) of the Revenue Act of 1928 deals only with the computation of gain or loss and has nothing whatever to do with the basis for depletion and depreciation. Some of the properties upon which depletion and depreciation are being claimed in this case were not sold and section 702 (a) can have no bearing upon the issue raised in connection with those properties.

The Board is not justified in reversing the Commissioner's disallowance of the salary deduction for 1924 on the facts found.

Goodrich agrees with this dissent.