### J. R. KNOWLAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45198, 60979.   Promulgated December 21, 1933.

*Hart H. North, Esq.*, and *B. H. Hicklin, C.P.A.*, for the petitioner. *Alva C. Baird, Esq.*, for the respondent.

### OPINION.

MARQUETTE: At the time of the seizure and detention of the Jane Gray and of the Lydia, the United States was asserting jurisdiction over a certain part of the Bering Sea more than three miles from the shore. This claim was denied by Great Britain and resulted in arbitration between the two governments. An account of these matters may be found in the opinion in *Whitelaw* v. *United States*, 75 Fed. 513, decided June 29, 1896. In that case the Circuit Court of Appeals held that seizures such as those here involved were illegal. Since that decision it has been recognized that the seizures were made without right. Nevertheless the United States not only did not compensate American citizens who were owners of the ships detained, but it was not until the approval of the Act of June 7, 1924, 43 Stat. 595, the material part of which is copied in the margin,[1] that suit was permitted against the United States on account of the seizures.

Remedial bills were passed by the Senate on three occasions between March 1906 and June 1910, and passed by the House on two occasions between January 1907 and February 1908, but such bills never became law.

On the state of facts set out in our findings, coupled with the historical facts we have detailed, the petitioner asserts that the amounts recovered are not taxable, since they constituted compensation for

---

[1] 1. That jurisdiction be, and it is hereby, conferred upon the United States District Court, Northern District of California, to hear and determine the claims of American citizens, their heirs and legal representatives, for damages or loss occasioned by or resulting from the seizure, detention, sale or interference with their voyages by the United States of vessels charged with unlawful sealing in the Bering Sea and water contiguous thereto and outside of the three mile limit during the years 1886 to 1896, inclusive, and to enter judgment therefor.

losses suffered; that he, the petitioner, acquired these claims by bequest and therefore his recovery of them is not taxable to him; that it has been a recognized fact, at least since the decision in the *Whitelaw* case, that the seizures were illegal, and since the United States was at all times solvent, the claims when acquired by him had a value equal to the amounts recovered; and, lastly, that so much of these recoveries as represented the lays or shares of the crews should be deducted. The suggestion is made that the recoveries were of a capital nature to the extent that money had been expended to equip the vessels.

With respect to the last contention, it may be pointed out that in the case of the Lydia the court made a deduction of $500 for cost of equipment and depreciation. We have no evidence whatever before us on this issue with reference to the Jane Gray and therefore can afford no relief. The fact that it is probable that such evidence cannot now be obtained does not serve to entitle the petitioner to relief in the absence of evidence. *Burnet* v. *Houston*, 283 U.S. 223.

While the damages recovered were for compensation for losses, the losses were not of a capital nature. The damages were measured by the average value of the vessels' probable catches, or, in other words, their probable losses of gross profits. Such recoveries are subject to income tax. *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359. Cf. *Kansas City Southern Ry. Co.* v. *Commissioner*, 52 Fed. (2d) 372, and *John J. Bliss*, 27 B.T.A. 803.

The petitioner acquired the claims against the United States in 1921 by bequest from his mother. The "value" of these claims was not taxable to him as income, but any income derived from the bequests is taxable. Sec. 213 (b) (3), Revenue Acts of 1921 and 1926, and sec. 22 (b) (3), Revenue Act of 1928. Such income may be made by a "sale or other disposition" of the bequest and the basis for the computation of such income is, as to that part received in 1926, the fair market value of the bequest as of the time of his mother's death (sec. 204 (a) (5), Revenue Act of 1926; *Brewster* v. *Gage*, 280 U.S. 327), and as to that part received in 1928, it being a general bequest, the fair market value of his claim at the time of distribution in February 1921. Sec. 113 (a) (5), Revenue Act of 1928.

When the petitioner recovered on his claims, he made a "disposition" of them within the meaning of that word as used in section 204 (a) of the Revenue Act of 1926 and section 113 (a) of the Revenue Act of 1928. *Ayer* v. *Blair*, 26 Fed. (2d) 547. We know the amounts of the recoveries but we are not informed as to what was the fair market value of the claims as of the basic dates. If the estate of the mother was subject to Federal estate tax, then the appraised value for such purpose of the claim on which recovery was

received in 1926 would establish its fair market value as of the time of her death (*Brewster* v. *Gage, supra*), and would afford a reasonable measure of such value of the other claim as of date of distribution, it not appearing that there was any material change in conditions. These claims were for unliquidated damages. In 1921 the Government not only had not paid any part of them, but for 29 years had not permitted itself to be sued on them. These factors must have had a very depressing effect on their fair market value. The respondent has determined that the claims had no value on the basic dates. In the absence of any evidence as to such value, the respondent is affirmed on this point. In reaching this conclusion we have given no consideration to the fact that these claims may not have been assignable.

In the alternative, the petitioner asserts that if we hold the recoveries are taxable to him, then the amounts recovered should be diminished by the amounts of the shares or lays of the crews. The nature of such claims is set forth in *United States* v. *Laflin*, 24 Fed. (2d) 683, which was an appeal from the judgment in the action relative to the detention of the *Lydia*. After stating that it was well settled that in whaling ventures the sailors who are entitled to a lay or share of the proceeds of the voyage as wages are never regarded as partners with the owners; that the owners of the vessel are the owners of the products of the voyage; that such a crew is rather to be deemed hired seamen than partners or joint contractors; and that neither the officers nor members of the crews may join with the owners in an action for recovery of the proceeds of the voyage, the court said:

In *Taber* v. *Jenny*, Fed. Cas. No. 13720, 1 Spr. 315, 322, it was said: "It is the right and duty of the owners to protect the products of the voyage, and if unlawfully taken by any one, to pursue and obtain them, and the seamen have then a right to share in the net avails. The owners must obtain and hold them for this purpose. Otherwise, the seamen could not get redress; they have no title to the property, and could maintain no action for it. If the owners neglect to take proper means to obtain indemnity, they would be responsible to seamen for that neglect. It is not for the respondents to say that the owners will not pay the crew. The respondents certainly have no right to their share; and an individual might as well say, when sued by a guardian, that perhaps he might never settle with his ward."

It is clear from the foregoing and other like decisions that the funds received by the owners in a case such as this are charged with a trust for the payment of the claims of the officers and crew of the vessel.

It thus appears that an agreement by the master or owner of a vessel to pay seamen a share of the profits of the voyage does not give the seamen any ownership in or title to the cargo, with the result that when recovery is sought for its loss the owner or master has the sole right to sue, and, having recovered the value of the

cargo, to hold for each sailor his proportionate share of the recovery, to be paid to him on demand.

The petitioner has participated in two recoveries and has recovered in his own name. It is not disclosed what disposition he has made of the parts of the recoveries which he now claims belong to the crew. It is not shown that he has segregated such parts and set them aside as trust funds for the benefit of the crews, they to receive the benefits of any income that may accrue from their shares. Income taxation is a very practical matter and the facts disclosed by this record should be viewed from a practical standpoint. The voyages were made in 1892. About 40 years elapsed between the voyages and the hearing of these proceedings. How many of the 66 men who composed the crews of the two vessels may now turn up and claim against the petitioner personally or through their representatives, we do not know. At the time of the hearing the petitioner had been in receipt of one recovery for five or six years, and of the other for three or four years, but he did not offer to prove that he had paid a single seaman. For all we know, final settlement may have been made with some of them. Under the circumstances of these proceedings, we are of opinion that the money recovered by the petitioner in his own name, while impressed with the quasi-trust in favor of the seamen to whom he is or may be indebted, is taxable to him without diminution by reason of the shares of the sailors. Furthermore, it would be a very difficult, if not an impossible task, to compute the value of the lays. We know the gross fractional part to which the crews are entitled, but we do not know what, if any, may have been forfeited under the articles; what settlements may have been made with the sailors; nor what was the total catch of whales of the Pacific Coast Fleet. Nor do we know what part the advancements would play in such a computation.

Reviewed by the Board.

*Decision will be entered for the respondent.*