## WESTBROOK-THOMPSON HOLDING CORPORATION v. UNITED STATES.
### No. 1743.

District Court, N. D. Texas, Fort Worth Division.
March 3, 1937.

Jno. L. Reeves, of Fort Worth, Tex., and Ivins, Phillips, Graves & Barker, of Washington, D. C. (Percy W. Phillips, of Washington, D. C., of counsel), for plaintiff.

J. L. Backstrom, Sp. Atty., Bureau of Internal Revenue, of Dallas, Tex., and Frank B. Potter, Asst. U. S. Atty., of Fort Worth, Tex.

ATWELL, District Judge.

This suit is brought for $9,955.31, plus interest, alleged to have been paid under protest.

The defendant raises two points:. First, that the application for refund made to the Commissioner is not the same as the cause of action declared upon. The declaration, in paragraph 4, is as follows: "At various times during 1927, R. A. Westbrook and S. A. Thompson purchased from the plaintiff for valuable consideration 485,003 shares of the capital stock of the plaintiff. It was the purpose of R. A. Westbrook and S. A. Thompson to become owners in severalty of said stock in equal shares, but, through inadvertance the certificates for said shares were made out by plaintiff to Westbrook & Company, the confusion arising from the fact that R. A. Westbrook and S. A. Thompson were equal partners therein and carried on most of their business through the partnership."

The claim filed with the Commissioner was as follows:

"On or about January 25th., 1927, Westbrook & Company, a partnership composed of R. A. Westbrook and S. A. Thompson, each of the partners sharing equally in the profits and losses, executed certain oil and gas lease assignments to Westbrook-Thompson Holding Corporation in exchange for 298,325 shares of stock of the corporation. The corporation also issued. 157,830 shares of stock to the partnership as commission stock for services rendered the corporation by R. A. Westbrook and S. A. Thompson.

"On November 9th., 1927, the partnership, Westbrook and Company equally divided the above mentioned stock to its members i. e., one-half to R. A. Westbrook and the other one-half to. S. A. Thompson.

"The Commissioner of Internal Revenue has assessed a stock transfer tax upon the above mentioned division of shares by the partnership to its members in the amount of $9,700.76, plus accrued interest amounting to $245.55 and which tax and interest was paid on January 27th., 1932.

"Said assessments of tax and interest are erroneous and illegal for the following reasons:

"1st. There was no transfer of legal title within the purview of schedule A–3 of the Revenue Act of 1926 on the division of the stock of the Westbrook-Thompson Holding Corporation by Westbrook & Company, to its partners.

. "2nd. In any event there was no transfer of legal title within the purview of subdivision A-3 of the Revenue Act of 1926 on the division of the stock of the Westbrook Holding Corporation by Westbrook & Company to its partners to the extent of 157,830 shares issued by the corporation for services. These shares were issued personally to R. A. Westbrook and S. A. Thompson by the corporation and, at most, the partnership of. Westbrook & Company was a mere agent for the individuals.

"3rd. In any event the transfer tax on 288,325 shares of no par stock and 157,830 shares of no par stock of the Westbrook-Thompson Holding Corporation amounts to only $9,123.10."

That claim was rejected by the Commissioner on August 19, 1932, and on June 15, 1933, the plaintiff filed a further claim for refund demanding $9,955.31, in the following words: "On January 16th., 1932 notice and demand was issued against the Westbrook-Thompson Corporation, Electric building, Fort Worth, Texas, in the amount of $9,955.31, which amount was made up of $9,700.76 principal and $254.55 interest for stamp taxes in connection with the alleged transfer of certain shares of stock of the Westbrook-Thompson Holding Corporation by Westbrook & Company, a partnership, to R. A. Westbrook and S. A. Thompson, individuals. The Westbrook-Thompson Holding Corporation paid the

tax and interest on January 27th., 1932. Under the provisions of title 8, section A-3 of the Revenue Act of 1926, no liability for such taxes is imposed upon the Westbrook-Thompson Holding Corporation. Further, these taxes for the alleged transfer of stock certificates should not, in any event, have been paid by the Westbrook-Thompson Holding Corporation. Accordingly, this refund claim is filed to recover said tax and interest, together with statutory interest thereon."

The claim was rejected by the Commissioner on January 4, 1934. Suit was filed on June 3, 1934.

On November 21, 1934, the defendant filed a first amended original answer.

The case seems to have dragged along. On June 5, 1936, a stipulation of fact was filed.

On February 25, 1937, Judge Wilson advised me of his disqualification and asked me to take the case over. This I agreed to do, and at once notified the attorneys that I would rule the case on the record, but gave them an opportunity to be heard in Dallas on Monday, March the first, 1937.

[1] It may be conceded that the two claims filed by the plaintiff before the Commissioner were not in the exact words of the plaintiff's suit here. Paragraph 4 of its petition, as above quoted, merely pleads ultimate facts, and is hardly an exact photograph of the representations made in the two claims. It would be rather difficult, however, to hold that the claims filed presented any other issue to the Commissioner than that Westbrook & Co., a partnership, had certain stock of the Westbrook-Thompson Holding Corporation, and that the two partners in the partnership, Westbrook and Thompson, concluded that they would partition the partnership assets and have the stock which the partnership held issued to each of them, separately, and in exact proportion to their interest in the partnership. That is, each claim complained that the reissue of the stock to the two equal partners in Westbrook & Co. by Westbrook-Thompson Holding Corporation was charged for and tax paid upon it to the collector. I do not discover that the Commissioner could have been misled as to the issue.

Either the collector or the United States may exact literal compliance with the statutory requirement that a claim or appeal shall be filed with the Commissioner before suit is brought for a tax refund, but, if the Commissioner is not deceived nor misled by the failure to describe accurately the claim, as obviously he was not here, it is more convenient for the government, and decidedly in the interest of orderly procedure, that it should be disposed of on its merits without requiring further proceedings. Tucker v. Alexander, 275 U.S. 228, 231, 48 S.Ct. 45, 46, 72 L.Ed. 253.

The claim set out in United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 271, 51 S.Ct. 376, 377, 75 L.Ed. 1025, was wholly insufficient to give any sort of notice as to what the taxpayer was trying to recover. In that case it was said that the object of the requirement was to advise the appropriate officials of the government of the demand or claim intended to be asserted so as to insure an orderly administration of the revenue. The statute which makes a claim a prerequisite to suit would not be satisfied by the filing of a paper which gave no notice of the amount or nature of the claim and refers to no facts upon which it is founded. One would be bold indeed to say that the two claims presented here were thus insufficient. They are somewhat prolix and support, it seems to me, the general paragraph of the petition.

Paragraph 6 of the petition goes a little bit more into definite detail and, when coupled with paragraph 4, shows substantially the same facts as set forth in the claims. Manifestly the entire petition must be considered.

The second question is much more difficult. The partners, in Westbrook & Co., are the persons against whom the law operates, since the partnership is not an entity in the sense that a corporation is, and, when the partnership was made up of two equal interests, one of which was owned by Westbrook, and the other by Thompson, the stock which Westbrook & Co. owned was really the stock of Westbrook and Thompson. The Westbrook Holding Corporation, having transferred to Westbrook & Co. the shares specified, received such shares back, and upon their cancellation issued an equal number of shares, divided equally, between Westbrook and Thompson. There was really no change of ownership. The property was merely divided. It was an issuance that was wholly unnecessary. Under the law the shares vested before the issuance precisely as they did after issuance. For some unknown purpose Westbrook and Thompson desired the reissue. Each wished to have his portion in his

own name. Equitably that was already the status of the property except that it was not so indicated upon the face of the property. See Shreveport-El Dorado Pipe Line Co. v. McGrawl (C.C.A.) 63 F.(2d) 202; U. S. v. Coulby (D.C.) 251 F. 982. Who is liable for the tax? Not who is liable for the criminal penalty for so issuing without stamps, but who should pay for the stamps and affix them?

Paragraph 6 of the stipulation of fact provides that, "between November, 1927, and May, 1928, Westbrook & Company endorsed in blank the same certificates of stock of the plaintiff corporation, standing in its name, and presented the same to the plaintiff corporation for the issuance of shares in the individual names of R. A. Westbrook and S. A. Thompson."

The plaintiff contends that the last part of paragraph 6 of the stipulation fixes the liability to pay such tax on Westbrook & Co. Such remaining part is as follows: "For value received ———— hereby sell, assign, and transfer unto ————, shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ———— attorney to transfer said stock on the books of the within named corporation with full power of substitution in the premises. Dated ————, 19—. Westbrook & Company, in the presence of ———— S. A. B." This portion of this paragraph is likened to transfers which it claims come within the last provision of paragraph 3, Schedule A, of section 800, title 8, Revenue Act 1926, 44 Stat. 99, 101 and that since the evidence of transfer is not shown only by the books of the corporation, but by this transfer, that the stamps should be placed upon the bill and not on the books. That, where the sale is made by delivery of certificates assigned in blank as indicated here, the stamp should be affixed to the memorandum of such sale, and therefore it is not shown only by the books of the corporation.

■ This is a revenue measure exclusively. The language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation, or to receive any certificate of any interest in its property, is surrendered by one and vested in another. It is wholly immaterial as to beneficial interest. Raybestos-Manhattan, Inc., v. U. S., 296 U.S. 60, 62, 56 S.Ct. 63, 64, 80 L.Ed. 44, 102 A.L.R. 111; Provost v. U. S., 269 U.S. 443, 46 S.Ct. 152, 70 L.Ed. 352.

■ By common consent, however, as evidenced by their briefs, the attorneys in this case concede that schedule A, paragraph 3, thereof is the one out of which must come its solution. That section deals with the imposition and collection of stamp taxes in the case of a sale or transfer of stock after its original issue. Taxes were paid on the original issue. The general language of section 800 at its beginning is made specific by this paragraph. In other words, the general phrases of the section are limited by the restrictions in this paragraph. It clearly indicates in the last proviso that in the case of sale, where the evidence of transfer is shown only by the books of the corporation or other organization, the stamp shall be placed upon such books; and, where the change of ownership is by transfer of the certificate, the stamp shall be placed on the certificate; and, in cases of an agreement to sell or where the transfer is by delivery of the certificate assigned in blank, there shall be made at delivery by the seller to the buyer a bill or memorandum of such sale to which the stamp shall be affixed. The penalty part of that same section uses words to cover each one of the classes of sale or transfer therein shown and specifically provides that "any person liable to pay the tax as herein provided, * * * who in pursuance of any such sale delivers any certificate * * * or bill * * * as herein required, without having the proper stamps affixed thereto, with intent to evade the foregoing provisions, shall be deemed guilty of a misdemeanor, and upon conviction thereof" punished as shown.

In the present case the sale was made and evidenced by the delivery of certificates assigned in blank, provided we construe the blank indorsement shown by the stipulation of fact to rise to that dignity. The certificate shows Westbrook & Co. to be the transferer. It shows that the stock transferred is that represented by the certificate. But it does not show who the transferee was. Nor does it show the date. The stipulation, however, gives the date as between November, 1927, and May, 1928, and that the stock when so indorsed was presented to the plaintiff corporation for issuance to the individuals, Westbrook and Thompson. It would seem that the statute required the making and delivery by Westbrook & Co., the seller, transferer, to the buyers, transferees, a bill or memorandum of such sale or transfer to which the stamps should have

been affixed. After this transfer, the plaintiff corporation issued the new stock. It was not involved in the sale. It was not a party to the transfer and had no knowledge of it until the transferred stock was presented to it for action in accordance with the contract made by the transferer and the transferees.

Attention has been called to alleged rulings of the Treasury Department prior to this legislation which seem to indicate the correctness of the above theory, but I have not had the benefit of a careful study of the same and I make no assertion with reference thereto. Of course, if there was such a construction prior to the re-enactment of the statute, the interpretation, unless clearly contrary to the law, is considered to have been adopted by Congress. Bowring v. Bowers (C.C.A.) 24 F.(2d) 918; Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457. It is claimed that a ruling was made in 1921, as above indicated, and was in effect when the act of 1926 was passed.

To tax the plaintiff corporation for this reissue of its stock to the individual members of the partnership is to tax it for a sale in which it had no interest or part. That suggestion would be valueless if the law means that the tax under schedule A, par. 3, is to be loosely placed on the issuing. If, however, the tax is figured with definiteness under the last provision of that paragraph, which seems to be the correct method, a bill or memorandum was due from Westbrook & Co. to Westbrook and Thompson upon which the stamps should have been affixed by Westbrook & Co.

There is another feature about the case that should also be noticed. The stipulation shows that before the transfer was made representatives of the partnership consulted with the internal revenue collector and were told that such a transfer would not be subject to this stamp tax. Information such as this from a government official is highly regrettable, but is not binding on the government. The law spoke for itself, and no officer had the right to say that what it said was not a fact. That has been the rule for more than a century. Some other cases are, Darling v. Commissioner (C.C. A.) 49 F.(2d) 111; Ritter v. U. S. (C.C.A.) 28 F.(2d) 265.

Judgment should go for the plaintiff. Conclusions of law are contained in this opinion and the facts are found as shown in the stipulation thereof.