### ALLEN v. MILLER HYDRO CO.
No. 12928.

United States Court of Appeals
Fifth Circuit.
April 12, 1950.
Rehearing Denied May 8, 1950.

---

* Note that there were substantial amendments to Article 8 in 1948, 62 Stat. 628–629, not here pertinent.

Melva M. Graney, Sp. Asst. to Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., John P. Cowart, U. S. Atty., Macon, Ga., for appellant.

E. D. Smith, Jr., Atlanta, Ga., for appellee.

Before HOLMES, McCORD and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This appeal from the United States District Court for the Middle District of Georgia involves excess profits tax of $948.10 paid by Miller Hydro Company for the fiscal period February 1, 1941 to June 30, 1941. The sole question presented is whether the court below erred in overturning the Commissioner's determination that the taxpayer was not entitled under section 718(a) (7) and (c) (5) of the Internal Revenue Code, 26 U.S.C.A. § 718(a) (7), (c) (5), to include in its equity invested capital, for excess profits tax purposes, the amount of $77,722.95, representing a deficit of Miller Manufacturing Company transferred to taxpayer pursuant to a plan of reorganization. The cause was tried by the court without a jury on stipulated facts and there were findings and a judgment for plaintiff. From this judgment the defendant appeals. The material facts are these:

Miller Hydro Company, a Georgia corporation hereinafter called the taxpayer, was organized to take over the assets of two corporations, Miller Manufacturing Company, a Georgia corporation, and its wholly-owned subsidiary, Miller Hydro Company of Wisconsin.

On January 31, 1941 the taxpayer acquired all of the assets of Miller Hydro of Wisconsin, in the amount of $328,239.16, in exchange for all of the capital stock of the taxpayer which consisted of ten shares of $50 par value common stock. Upon the exchange the taxpayer assumed all obligations of Miller Hydro of Wisconsin,

amounting to $163,058.09. The basis of such property in the hands of the taxpayer thus exceeded the liabilities of Miller Hydro of Wisconsin assumed by the taxpayer by the sum of $165,181.07.

Immediately after the above transaction Miller Manufacturing Company transferred to Miller Hydro of Wisconsin all of the stock of that company owned by Miller Manufacturing Company (which constituted all of the outstanding common stock of Miller Hydro of Wisconsin except 780 shares of treasury stock owned by Miller Hydro of Wisconsin) in exchange for the stock of the taxpayer owned by Miller Hydro of Wisconsin, namely, ten shares of $50 par value common stock. Thereafter, Miller Hydro of Wisconsin, whose only asset was then its own capital stock, ceased its corporate existence.

Thereafter, Miller Manufacturing Company and the taxpayer were merged under the corporation law of the State of Georgia. Pursuant to such merger, Miller Manufacturing Company transferred all of its assets to the taxpayer and the taxpayer assumed all of the liabilities of Miller Manufacturing Company. The taxpayer issued its capital stock to the shareholders of Miller Manufacturing Company share for share and the capital stock of Miller Manufacturing Company was surrendered by its stockholders. After said merger, the former shareholders of Miller Manufacturing Company owned all the stock of the taxpayer and owned such stock in the same proportions that they had formerly owned the stock of Miller Manufacturing Company. The assets owned by Miller Manufacturing Company and which were transferred to the taxpayer pursuant to the statutory merger had an unadjusted basis for determining loss in the amount of $260-370.56 and the liabilities of Miller Manufacturing Company, which were assumed by the taxpayer, amounted to $38,093.51. The basis of such property in the hands of the taxpayer, exclusive of the stock of Miller Hydro of Wisconsin and exclusive of the treasury stock of Miller Manufacturing Company owned by that company immediately prior to the merger, exceeded the liabilities of Miller Manufacturing Company assumed by taxpayer by the sum of $887.31.

Prior to January 31, 1941, Miller Manufacturing Company had a deficit in earnings and profits of $77,722.95, all of which deficit in earnings and profits was attributable to the property transferred to the taxpayer as above described.

The transfers above described were all effected upon January 31, 1941, pursuant to a plan of reorganization described in a certain closing agreement between the taxpayer and the Commissioner of Internal Revenue.

Sections 718(a) (7) and 718(c) (5) of the Internal Revenue Code[1] provide that in certain cases the invested capital of a transferee corporation, which acquires substantially all of the assets of a transferor corporation, may be increased by the amount of the deficit attributable to the property so transferred. The rule increasing the invested capital of a corporation by the deficit of its transferor applies only if a corporation, called the transferor: (1) transfers substantially all of its property to another corporation, called the transferee, which is formed to acquire such property; if (2) the sole consideration for the transfer of such property is the transfer to the transferor or its shareholders of all the stock of all classes of the transferee; (3) the transferor is forthwith completely liquidated in pursuance of the plan under which the acquisition of the property is made; and (4) immediately after the liquidation the stockholders of the transferor own all the stock of the transferee.

Contemporaneously with the enactment of the statute under consideration, the Treasury Department promulgated regulations[2] interpreting its provisions, which regulations read in part as follows: "The provisions of section 718(a) (7), section 718(b) (5), and section 718(c) (5) shall apply only

1. 26 U.S.C.A. § 718.
2. Sec. 30.718-7 of Treasury Regulations

109. Changed to Sec. 30.718-8 by T.D. 5299, 1943 Cum.Bull. 747.

in the case of a tax-free exchange involving a single transferor and shall not apply to instances where two or more transferors transfer property to a transferee in a tax-free exchange."

The court below held that the action of the Commissioner, based upon the above quoted regulation, denying to taxpayer the right to include in its equity invested capital the deficit in earnings and profits of Miller Manufacturing Company, was erroneous and illegal. Insisting that the case was rightly decided, the taxpayer argues that the word "transferor" as used in section 718(c) (5) is broad enough to cover a situation where two transferors are involved; and that in so far as Treasury Regulations 109 seeks to limit section 718(a) (7) and section 718(c) (5) to situations involving a single transferor, the regulations are contrary to the provisions of the Internal Revenue Code and, therefore, invalid. We think otherwise.

The general purpose of the excess profits tax was to syphon off the bulk of the war profits attributable to the unprecedented expenditures which the government made in connection with the war effort. Certain it is that the provisions of the statute under consideration were not enacted to permit various corporations to be so manipulated that a new corporation could be put into operation with a better capital structure for excess profits tax purposes. The specific problem presented to Congress,[3] at the time when the amendment to section 718 was under consideration, was the removal of a discrimination which then existed between a corporation which continued to do business without a change in the corporate jurisdiction and a corporation which changed its state of incorporation and continued the same business as before. Under the then existing law a corporation with an operating deficit, continuing to do business without a change in its corporate jurisdiction, was entitled to the benefits of the so-called deficit rule; that is to say, while accumulated earnings and profits would increase its invested capital, any deficits in earnings and profits would not have the effect of decreasing its invested capital. On the other hand, a corporation which reincorporated into a corporation of another state with precisely the same assets and shareholders, and was to all intents and purposes a continuation of the same business, was not entitled in computing its equity invested capital to include therein any deficit of its predecessor.[4] The amendment was intended to correct this unfair situation.

There is nothing in the act or in its legislative history to indicate a purpose to include within its provisions a situation where more than one transferor is involved. The testimony at the Congressional hearings speaks of "transferor" entirely in the singular. Nowhere in this testimony or in the Finance Committee Report,[5] or in the House Conference Report[6] is there the slightest suggestion that the word transferor includes and applies to more than one transferor. If a plural construction was intended, it is strange indeed that no one

3. 2 House Hearings on the Revenue Act of 1942, 77th Cong., 2d Sess., pp. 2245; 2255; 1 Senate Hearings on the Revenue Act of 1942, 77th Cong., 2d Sess., pp. 388–397.

4. In Montgomery's Federal Tax on Corporations (1943) the following is said on this subject (p. 359): Section 718(c) (5) is very narrow. The requirements of subparagraph (d), that immediately after the liquidation the shareholders of the transferor must own all the stock, apparently restricts the application of the deficit provisions to those cases where a business is reincorporated, e. g., a change in the state of incorporation. And it is said further (p. 365): The "transferor", as defined in subsection (c) (5), is a corporation which has transferred substantially all its assets to the transferee solely for all the stock of the transferee and has been completely liquidated forthwith. Immediately after the liquidation the shareholders of the transferor must own all the stock of the transferee. Hence, the provision is very narrow in scope, and will apparently apply only to invested capital of the current taxable year in a case where a business is reincorporated in another state.

5. S.Rep.No.1631, 77th Cong., 2d Sess., p. 193.

6. H. Conference Rep.No.2586, 77th Cong., 2d Sess., p. 61.

involved in the creation of this legislation, either while discussing its merits or in giving examples of its application, ever used the word transferor in its plural form. The provisions of 1 U.S.C.A. § 1, upon which appellee relies, is not applicable for the context of section 718(a) (7) and 718(c) (5) clearly indicates the word "transferor" was not intended by Congress to include and apply to several transferors.

The action of the Commissioner in declining to allow the taxpayer to include in its invested capital the deficit of Miller Manufacturing was in accordance with the aforementioned Treasury Regulations 109, which restricts application of the provisions to the case of a tax-free exchange involving a single transferor and specifically excludes instances where two or more transferors transfer property to a transferee. Such interpretation constitutes contemporaneous construction of the subsections under consideration by those charged with the administration of the act, is entitled to great weight,[7] and is valid unless unreasonable or inconsistent with the statute.[8] We are of the opinion that the regulation on which the Commissioner relied is a reasonable interpretation of the statute and wholly consistent with its provisions.

The judgment is reversed and the cause is remanded with directions to enter judgment for the defendant.

7. United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; Brewster v. Gage, 50 S.Ct. 115, 280 U.S. 327, 74 L.Ed. 457; Norwegian Nitrogen Products Co. v.

U. S., 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796.

8. Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397.